# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| E.K. and S.K., minors, by and through their parent and next friend LINDSEY KEELEY;  O.H., S.H., and H.H., minors, by and through their parent and next friend JESSICA HENNINGER;  E.G., a minor, by and through his parent and next friend MEGAN JEBELES;  E.Y. and C.Y., minors, by and through their parent and next friend ANNA YOUNG;  L.K., L.K., and L.K., minors, by and through their parent and next friend ANNA KENKEL; and M.T., a minor, by and through her parent and next friend NATALIE TOLLEY, | Case No. 1:25-cv-00637-PTG-IDD<br><br>Hon. Patricia Tolliver Giles |
|                          Plaintiffs, |  |
| v. |  |
| DEPARTMENT OF DEFENSE EDUCATION ACTIVITY; DR. BETH SCHIAVINO-NARVAEZ, in her official capacity as Director of the Department of Defense Education Activity; and PETER BRIAN HEGSETH, in his official capacity as Secretary of Defense, |  |
|                          Defendants. |  |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

SUMMARY OF UNDISPUTED FACTS ............................................................................1

ARGUMENT .....................................................................................................................3

I. Plaintiffs have standing to pursue both of their First Amendment claims ......................3

II. Plaintiffs are likely to prevail on the merits. ..................................................................4

    A.  Plaintiffs are likely to prevail on the merits that the
        Government's book removals violate the First Amendment ................4

        1.  Library curation is not "government speech".............................4

        2.  Pico applies to the Government's book removals ....................7

    B.  Plaintiffs are likely to prevail on the merits that the
        Government's curricular removals violate the First Amendment........10

        1.  *Hazelwood* and *Arce* apply to the Government's
           curricular removals ................................................................10

        2.  The First Amendment provides a guardrail for
           curricular censorship .............................................................12

III. Plaintiffs are irreparably harmed absent an injunction ...............................................13

IV. The balance of equities and the public interest favor Plaintiffs ..................................14

V. Plaintiffs timely requested preliminary injunctive relief..............................................15

VI. Plaintiffs should not be required to post bond ...........................................................17

VII. Any preliminary injunction should apply across DoDEA .........................................18

CONCLUSION ................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Arce v. Douglas,*
     793 F.3d 968 (9th Cir. 2015)..................................................................................... 10, 11

*Benisek v. Lamone,*
     585 U.S. 155 (2018) ....................................................................................................17

*Board of Education, Island Trees Union Free School District No. 26 v. Pico,*
     457 U.S. 853 (1982) ...............................................................................................6, 7, 8

*Boring v. Buncombe County Board Of Education,*
     136 F.3d 364 (4th Cir. 1998).................................................................................. 10, 11

*Califano v. Yamasaki,*
     442 U.S. 682 (1979) ....................................................................................................18

*Case v. Unified School District No. 233,*
     895 F. Supp. 1463 (D. Kan. 1995)...........................................................................7, 9

*Centro Tepeyac v. Montgomery County,*
     722 F.3d 184 (4th Cir. 2013).......................................................................................14

*Cockrel v. Shelby County School District,*
     270 F.3d 1036 (6th Cir. 2001) .....................................................................................11

*Cooksey v. Futrell,*
     721 F.3d 226 (4th Cir. 2013)........................................................................................16

*Counts v. Cedarville School District,*
      295 F. Supp. 2d 996 (W.D. Ark. 2003) ....................................................................8, 9

*Davison v. Randall,*
     912 F.3d 666 (4th Cir. 2019)..........................................................................................9

*Denver Area Educational Telecommunications Consortium, Inc. v. FCC,*
      518 U.S. 727 (1996) ....................................................................................................13

*Epperson v. State of Arkansas,*
     393 U.S. 97 (1968) ......................................................................................................12

*Evans-Marshall v. Board Of Education of Tipp City Exempted Village School District,*
     624 F.3d 332 (6th Cir. 2010)........................................................................................11

*Garcetti v. Ceballos,*
     547 U.S. 410 (2006) .....................................................................................................11

*Giovani Carandola, Ltd. v. Bason,*
    303 F.3d 507 (4th Cir. 2002) ................................................................................14

*GLBT Youth in Iowa Schools Task Force v. Reynolds,*
    114 F.4th 660 (8th Cir. 2024) .............................................................................4, 5

*González v. Douglas,*
    269 F. Supp. 3d 948 (D. Ariz. 2017) ..............................................................11, 12

*Hazelwood School District v. Kuhlmeier,*
    484 U.S. 260 (1988) .......................................................................................10, 11

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,*
    174 F.3d 411 (4th Cir. 1999) ...............................................................................17

*Hutton v. National Board of Examiners in Optometry, Inc.,*
    892 F.3d 613 (4th Cir. 2018) ...............................................................................13

*Keyishian v. Board of Regents of University of State of New York,*
    385 U.S. 589 (1967) .............................................................................................14

*Little v. Llano County,*
    No. 23-50224, 2025 WL 1478599 (5th Cir. May 23, 2025) ..............................5, 8

*Manhattan Community Access Corp. v. Halleck,*
    587 U.S. 802 (2019) ...............................................................................................5

*Matal v. Tam,*
    582 U.S. 218 (2017) .............................................................................................4, 6

*Meyer v. Nebraska,*
    262 U.S. 390 (1923) .............................................................................................12

*Minarcini v. Strongsville City School District,*
    541 F.2d 577 (6th Cir. 1976) .......................................................................3, 9, 13

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ...............................................................................................6

*National Association of Diversity Officers in Higher Education v. Trump,*
    No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025) ............17, 18

*National Association of Diversity Officers in Higher Education v. Trump,*
    No. 25-CV-0333-ABA, 2025 WL 750690 (D. Md. Mar. 10, 2025) ......................17

*National Rifle Association of America v. Vullo,*
    602 U.S. 175 (2024) .............................................................................................4, 6

*National Wildlife Federation v. Burford*,
    835 F.2d 305 (D.C. Cir. 1987) .................................................................17

*North Carolina State Conference of the NAACP v. Raymond*,
    981 F.3d 295 (4th Cir. 2020) ..................................................................17

*North Carolina v. Covington*,
    581 U.S. 486 (2017) ................................................................................18

*Pashby v. Delia*,
    709 F.3d 307 (4th Cir. 2013) ..................................................................17

*Penguin Random House LLC v. Robbins*,
    No. 4:23-CV-00478, 2025 WL 1156545 (S.D. Iowa March 25, 2025) ...................7

*People for the Ethical Treatment of Animals, Inc. v. Gittens*,
    414 F.3d 23 (D.C. Cir. 2005) .....................................................................7

*Perry v. Judd*,
    471 F. App'x 219 (4th Cir. 2012) ...........................................................17

*Planned Parenthood of South Carolina Inc. v. Rose*,
    361 F.3d 786 (4th Cir. 2004) .....................................................................5

*Pratt v. Independent School District No. 831*,
    670 F.2d 771 (8th Cir. 1982) ..................................................................10

*Right To Read Defense Committee of Chelsea v. School Committee of City of Chelsea*,
    454 F. Supp. 703 (D. Mass. 1978) ............................................................9

*Roberts v. Madigan*,
    702 F. Supp. 1505 (D. Colo. 1989) ..........................................................9

*Roberts v. Madigan*,
    921 F.2d 1047 (10th Cir. 1990) ...............................................................9

*Rossignol v. Voorhaar*,
    316 F.3d 516 (4th Cir. 2003) ....................................................................9

*Salvail v. Nashua Board of Education*,
    469 F. Supp. 1269 (D.N.H. 1979) ............................................................9

*Satellite Broadcasting & Communications Association v. F.C.C.*,
    275 F.3d 337 (4th Cir. 2001) ....................................................................9

*Sheck v. Baileyville School Committee*,
    530 F. Supp. 679 (D. Me. 1982) ...............................................................9

iv

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)..........................................................................................6

*United States v. American Library Association, Inc.*,
    539 U.S. 194 (2003) .........................................................................................7

*United States v. Associated Press*,
    326 U.S. 1 (1945) ............................................................................................14

*United States v. Associated Press*,
    52 F. Supp. 362 (S.D.N.Y. 1943) ...................................................................14

*Virden v. Crawford County*,
    No. 2:23-CV-2071, 2024 WL 4360495 (W.D. Ark. Sep. 30, 2024) .................9

*Virgil v. School Board of Columbia County*,
    862 F.2d 1517 (11th Cir. 1989).......................................................................10

*West Virginia Board of Education v. Barnette*,
    319 U.S. 624 (1943) .........................................................................................7

*White v. Daniel*,
    909 F.2d 99 (4th Cir. 1990).............................................................................17

*Zykan v. Warsaw Community School Corp.*,
    631 F.2d 1300 (7th Cir. 1980).........................................................................12

## Other Authorities

*Regional Calendars*, Department of Defense Education Activity,
    https://www.dodea.edu/regional-calendars......................................................3, 15

## Rules

Federal Rule of Civil Procedure 65(c)............................................................................17

**INTRODUCTION**

Political censorship in schools and libraries is a canary in the coal mine of democracy. In an astounding submission, the Government admits that it has removed 555 books and 41 curricular resources across all Department of Defense Education Activity ("DoDEA") schools in order to implement the President's Executive Orders targeting "gender ideology" and "discriminatory equity ideology." These removals were conducted based on keywords and perceived ideological affiliations; only *post hoc* has DoDEA undertaken a review process which it says is ongoing. Despite DoDEA's continued opacity about what specific books and materials have been removed, it is not disputed that certain identified books and curricula are now unavailable to DoDEA students around the world. This has created an ongoing First Amendment injury to Plaintiffs and other DoDEA students. As DoDEA continues its reviews and lesson planning for next year, this court should enjoin further censorship and order DoDEA to return to its best teaching practices as they existed before this political interference.

**SUMMARY OF UNDISPUTED FACTS**

The Government's opposition confirms the key facts in Plaintiffs' Motion for a Preliminary Injunction. DoDEA educates the Pre-K-12 dependents of military-connected families. Opp. at 2-3 (Dkt. No. 29). DoDEA's curriculum is controlled by DoDEA Headquarters. Opp. at 3. In the ordinary course, DoDEA's Research, Accountability, and Evaluation Division at headquarters reviews DoDEA's more than 50 curricular programs on a five-year review cycle. Opp. at 3. Subject to DoDEA policy and guidelines, each school, librarian, and teacher also has discretion to select books and supplement the curriculum. *See* Opp. at 4; Opp., DEX 1 at 7-8, 12 (Dkt. No. 29-1). For removals, DoDEA policy is structured to adopt a formal "challenge" process that disfavors the

1

wholesale removal of school-wide or systemwide student access to educational books and curricular materials. *See* Opp., DEX 1 at 4-6, 9-11, 13-21.

In February, outside the ordinary curricular review, selection, or challenge processes, DoDEA initiated a special "book and curricular review." This review is being done to implement three new presidential executive orders targeting "gender ideology" and "discriminatory equity ideology," along with related Secretary of Defense guidance and directives. Opp. at 4-5. For books, "[a]t each school in the DoDEA global network, instructional systems specialists identified books in their library collections and in their classrooms that required further review." Opp. at 5. The specialists identified books for removal "based on the terms used in the Executive Orders," other "keywords" that "implied a potential for noncompliance with the EOs," and the educators' subjective "determinations that certain materials may not comport with the purpose of the EOs." Opp. at 5-6. As of May 23, 2025, DoDEA has removed 555 books for further review. Opp., DEX 3 ¶ 10 (Dkt. No. 29-3). DoDEA's opposition does not identify the specific titles removed. This systemwide "focused review" of removed books and materials "is ongoing," subject to "final review and approval" by the DoDEA Director and Department of Defense. Opp. at 6. The Government did not provide an estimated timeline for completion of that review.

DoDEA Headquarters has undertaken a similar process to impose systemwide cuts to materials from DoDEA's curriculum. Opp. at 6. As of May 23, 2025, DoDEA had restricted 41 classroom resource components pending further review. Opp., DEX 3 ¶ 10. DoDEA admits that several classroom resources and lessons addressing race and gender were removed from Plaintiffs' schools' curricula. *See* Opp., DEX 4 ¶¶ 22-24, 26-27, 29 (Dkt. No. 29-4). DoDEA schools have also cancelled cultural heritage month celebrations, which are part of the schools' curriculum. Opp.

at 5, 10. These curricular changes have been implemented by DoDEA systemwide, but the "final review and approval" is likewise still pending. Opp. at 6.

DoDEA students are nearing completion of the 2024-2025 school year, but Plaintiffs and their classmates will return for the 2025-2026 school year between August 4 and August 18.[1]

## ARGUMENT

### I.    Plaintiffs have standing to pursue both of their First Amendment claims.

The Government acknowledges that multiple Plaintiffs did not learn lessons or participate in curricular educational experiences this semester because of DoDEA's implementations of the EOs. Opp., DEX 4 ¶¶ 22-24, 26-27, 29. The Government therefore makes no attempt to contest Plaintiffs' standing to challenge the curricular removals.

Plaintiffs also have standing to challenge the book removals. The Government asserts Plaintiffs lack standing because Plaintiffs have not attempted to access the specific books the Government admits it is suppressing. Opp. at 15-16. But this is not a requirement for standing in a book access challenge. *See Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976) (determining that student plaintiffs had standing to raise a First Amendment right to receive information claim challenging the removal of books from their school library without imposing any requirement plaintiffs had sought to check out the specific titles themselves). Nor is the Government's asserted rule fair. It would allow DoDEA to avoid review through obfuscation.

The Government acknowledges that throughout DoDEA schools, 555 books have been removed. Opp., DEX 3 ¶ 10. The Government refuses, however, to identify the removed books. If the Government's standing argument were correct, Plaintiffs would not be able to vindicate a First Amendment injury without detailed information DoDEA alone possess. Parents have repeatedly

---

[1] See *Regional Calendars*, Dep't of Def. Educ. Activity, https://www.dodea.edu/regional-calendars.

3

asked school officials, attended meetings, and even filed Freedom of Information Act requests in an attempt to ascertain the scope of Plaintiffs' injuries, but at every turn, DoDEA has thwarted their efforts. Keeley Decl. ¶¶ 19-26 (Dkt. No. 10-23); Henninger Decl. ¶ 18 (Dkt. No. 10-24); Kenkel Decl. ¶ 20 (Dkt. No. 10-26); Tolley Decl. ¶ 12 (Dkt. No. 10-27). DoDEA's opacity cannot be allowed to hamstring Plaintiffs' valid claims.

## II.    Plaintiffs are likely to prevail on the merits.

### A.    Plaintiffs are likely to prevail on the merits that DoDEA's book removals violate the First Amendment.

#### 1.    Library curation is not "government speech."

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). Here, the Government admits it has barred DoDEA students from accessing 555 books at DoDEA school libraries around the world. Opp., DEX 3 ¶ 10. The government also admits that those book removals are based entirely on the Government's assessment that each book might express racial or gender viewpoints with which the Government ideologically disagrees. Opp. at 5-6. This is fundamental viewpoint discrimination.

The Government does not dispute it has engaged in viewpoint discrimination. Instead, the Government asserts it has broad discretion to remove books because library curation is an act of government speech. Opp. at 8-9, 17.[2] But "government speech" offers no defense here. As the Eighth Circuit recently held, "the Supreme Court has not extended the government speech doctrine to the placement and removal of books in public school libraries." *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024). Nor is it likely to do so because "it is doubtful

---

[2] The underlying content of each individual book is, of course, private speech. *See Matal v. Tam*, 582 U.S. 218, 239 (2017) (recognizing that the government's trademark and copyright registration systems are government regulations of private speech which cannot engage in viewpoint discrimination, and not government speech).

that the public would view the placement and removal of books in public school libraries as the government speaking." *Id.* at 668. This court should not take that extraordinary step.[3]

The government speech defense requires the Government to demonstrate both that (a) the Government is expressing its own viewpoint, *and* (b) the government's action does not regulate, harm, or suppress private speech. *See, e.g., Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 792 (4th Cir. 2004) (holding that "when the government speaks for itself *and is not regulating the speech of others*, it may discriminate based on viewpoint") (emphasis added). Here, the Government's book removals constitute regulatory action aimed at suppressing disfavored political viewpoints and harming students' First Amendment right to receive information. The Government nonetheless contends that "DoDEA's expressive act of curating its libraries is a form of government speech exempted from significant scrutiny under the Free Speech Clause of the First Amendment." Opp. at 18. This argument rests on two fundamental flaws. First, government actors are not private actors with First Amendment rights. And second, government speech must add to the marketplace of ideas, not subtract from it.

As a preliminary matter, the Government is bound by the First Amendment, not protected by it. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804 (2019) ("The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors."). The Court should resist the Government's attempt to re-formulate and expand government speech doctrine to include library curation. Seemingly with a situation like this in mind, the Supreme Court warned that the government speech doctrine "is susceptible to dangerous misuse" and could be used badly to "silence or muffle the expression of disfavored viewpoints." *Matal v. Tam*, 582

---

[3] Since Plaintiffs filed their Motion for a Preliminary Injunction, the Fifth Circuit issued a ruling *en banc* in *Little v. Llano Cnty.*, No. 23-50224, 2025 WL 1478599 (5th Cir. May 23, 2025). A 10-member majority held that Plaintiffs' First Amendment claims should be dismissed, reaffirming the circuit split with regard to *Pico*. Notably, only seven out of 14 judges joined the assertion that school library curation is government speech.

U.S. 218, 235 (2017). To the contrary, the most on-point Supreme Court case closely scrutinized ideologically-grounded book removals from public libraries, and found them unconstitutional. *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (plurality op.).

Despite a clear distinction between government and private speech, the Government attempts to analogize its "curation" conduct to cases about private editorial discretion. Opp. at 17 (citing *Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024)). This attempt turns First Amendment standards upside down. The logic of *Moody* protects Plaintiffs' right to access information, not the Government's fictional right to ban books. The Supreme Court recognized in *Moody* that the First Amendment serves to ensure the public "has access to a wide range of views . . . by preventing *the government* from 'tilt[ing] public debate in a preferred direction.'" *Moody*, 603 U.S. at 741 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578–79 (2011)). When the Government chooses to contract the range of information available to the public, the First Amendment does not protect it.

In addition, the government speech doctrine requires the Government to *add* its own message to the marketplace of ideas, and not to wield Government power in order to regulate or *suppress* private speech rights. *See Vullo*, 602 U.S. at 188 (2024) (holding that government officials may not "use the power of the State to punish or suppress disfavored expression."). The government speech doctrine recognizes that "[w]hen government officials are engaging in their own expressive conduct," the government can "say what it wishes" and "select the views that it wants to express." *Vullo*, 602 U.S. at 187 (citation omitted). Government officials are thus free to make viewpoint-based decisions when authoring, editing, championing, funding, or otherwise selecting new speech to favor or support. *See, e.g.*, *People for the Ethical Treatment of Animals,*

*Inc. v. Gittens*, 414 F.3d 23, 29 (D.C. Cir. 2005) (collecting cases). Plaintiffs thus do not dispute that DoDEA educators have considerable discretion to select books based on their "educational significance," "favorable reviews," and "artistic quality," among other criteria. *See* DEX 1 at 7-8; *accord United States v. Am. Libr. Ass'n, Inc.,* 539 U.S. 194, 204 (2003) (recognizing public librarians' broad discretion to make collection decisions). What Plaintiffs *do* challenge is book *removals* specifically aimed at Governmental suppression of disfavored political viewpoints. *See Pico* at 872 (quoting *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). The First Amendment intervenes the moment the Government chooses to wield its power to subtract.

### 2. Pico *applies to DoDEA's book removals.*

*Pico* "is the only Supreme Court decision dealing specifically with removal of books from a public school library" and "must be used as a starting point." *Case v. Unified Sch. Dist. No. 233*, 895 F. Supp. 1463, 1469 (D. Kan. 1995); *see also Penguin Random House LLC v. Robbins*, No. 4:23-CV-00478, 2025 WL 1156545 (S.D. Iowa March 25, 2025) (applying *Pico,* and explicitly rejecting *Hazelwood,* as the proper standard for evaluating the constitutionality of a *state statute* regarding school library book removal). The *Pico* plurality held that school boards "may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" 457 U.S. at 872 (quoting *W. Va. Bd. of Educ.*, 319 U.S. at 642).

The Government asserts that Justice White's concurrence controls and is "best read to mean that the precedential holding of *Pico* is that disputes of fact in that case's record prevented entry of summary judgment . . . [thus] *Pico* supplies no precedential value." Opp. at 23. While the Government is correct that Justice White's opinion in Pico is the narrowest concurrence, the

Government is wrong to suggest that Justice White's opinion supplies no precedential value. *Id.* On the contrary, "Justice White's opinion confirms the same conclusion about the threshold First Amendment inquiry as the *Pico* plurality, whose judgment Justice White joined: that determining a state's motivation is necessarily anterior to assessing whether a book removal violates the First Amendment." *Little v. Llano Cnty.*, No. 23-50224, 2025 WL 1478599 (5th Cir. May 23, 2025) (Higginson. J., dissenting in the judgement) (citing *Pico*, 457 U.S. at 883 (White, J., concurring in the judgment)). Justice White agreed the case should be remanded for further fact-finding about the board's reasons for removing library books—an exercise that would have no purpose if no facts could establish a First Amendment violation. *Pico*, 457 U.S. at 883–84.

Plaintiffs will likely succeed in proving DoDEA's unconstitutional motives for removing the books because the Government offers no legitimate justification for the removals. While the Government repeatedly cites "pedagogical concerns" as a basis for book removals, they offer no further explanation. In fact, DoDEA argues that its motives were permissible not because they were acting pursuant to a reasoned educational decision, but because books were reviewed for compliance with the Executive Orders' bans on "gender ideology" and "discriminatory equity ideology." Opp. at 4-5. But this misses the mark. Each of the categories identified by the EOs and DoDEA guidance contains "ideas to which students have a right to choose to be exposed." *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004 (W.D. Ark. 2003). The justifications offered by DoDEA have nothing to do with pedological concerns and everything to do with compliance with Executive Orders. However, the Executive Orders are, on their face, viewpoint discriminatory and they therefore cannot provide a legitimate government interest. Plaintiffs' claims are therefore likely to succeed under *Pico.*

The Government appears to argue that *Pico* is no longer good law. But "[e]ven if the [C]ourt concluded that *Pico* is not persuasive precedent, the majority of courts faced with a school book banning case have held that the removal of a book was unconstitutional." *Case v. Unified Sch. Dist. No. 233*, 895 F. Supp. at 1469 (citation omitted); *see also Virden v. Crawford Cnty.*, No. 2:23-CV-2071, 2024 WL 4360495, at *4 (W.D. Ark. Sep. 30, 2024); *Minarcini*, 541 F.2d at 582; *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 693 (D. Me. 1982); *Right To Read Def. Comm. of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 715 (D. Mass. 1978); *Salvail v. Nashua Bd. of Educ.*, 469 F. Supp. 1269, 1272, 1275 (D.N.H. 1979); *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d at 1005; *Roberts v. Madigan*, 702 F. Supp. 1505, 1513 (D. Colo. 1989), *aff'd*, 921 F.2d 1047 (10th Cir. 1990). Indeed, while not addressing book removals, the Fourth Circuit repeatedly has cited approvingly to the plurality opinion. *See, e.g., Davison v. Randall,* 912 F.3d 666, 685 (4th Cir. 2019), as amended (Jan. 9, 2019); *Rossignol v. Voorhaar,* 316 F.3d 516, 522 (4th Cir. 2003); *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 353 (4th Cir. 2001). This Court should do the same.

Even if, contrary to caselaw, the Court were to take the government's invitation to apply *Hazelwood* to book removals, Plaintiffs would still win because DoDEA fails to offer any rational basis or pedagogical concern behind the removals. Instead, DoDEA admits their entire purpose was to implement the ideologically-grounded Executive Orders. Opp. at 1, 6, 13, 23; Opp., DEX 2 ¶¶ 5, 9 (Dkt. No. 29-2); Opp., DEX 4 ¶¶ 18-20.

Under any applicable First Amendment test, the Government cannot decide to remove 555 books from public school libraries purely on the basis of potential viewpoint disagreement. The Court should grant Plaintiffs' motion for a preliminary injunction and order the books' reinstatement.

B.   **Plaintiffs are likely to prevail on the merits that DoDEA's curricular removals violate the First Amendment.**

1.   *Hazelwood* and *Arce* apply to DoDEA's curricular removals.

Plaintiffs agree with the Government that *Hazelwood*, and not *Pico*, governs DoDEA's curricular removals. Opp. at 9. Nevertheless, DoDEA's removal of 41 undisclosed curricular materials in order to implement the EOs does not satisfy the *Hazelwood* pedagogical test. *Hazelwood* instructs that restrictions on students' access to information must be "reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (footnote omitted). Moreover, it is the Government's burden to establish that interest. *See id.* Courts applying *Hazelwood* have repeatedly reaffirmed that public school students possess a First Amendment right to receive curricular information, safeguarding them from official acts of curricular censorship unjustified by legitimate pedagogical concerns. *See, e.g., Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015); *Virgil v. Sch. Bd. of Columbia Cnty.*, 862 F.2d 1517 (11th Cir. 1989); *Pratt v. Indep. Sch. Dist. No. 831*, 670 F.2d 771 (8th Cir. 1982).

Rank viewpoint discrimination does not qualify as a legitimate pedagogical concern. *See Pratt*, 670 F.2d at 779 (holding school board violated the First Amendment when it blocked the presentation of a controversial film "because the majority of the board agreed with those citizens who considered the films' ideological and religious themes to be offensive"). Thus far, the Government has provided no legitimate pedagogical purpose for why, for example, Plaintiffs were unable to present the schoolwork they prepared for Black History Month. Henninger Decl. ¶ 14.

The Government points to *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364 (4th Cir. 1998) (en banc) to assert that Plaintiffs lack a cognizable First Amendment interest in the curriculum choices made by school authorities. But *Boring* is inapposite. It holds that teachers, as government employees, lack a First Amendment right to deviate from the curricular choices made

10

by school officials who possess decision-making authority over its content. *Boring*, 136 F.3d at 366 ("The only issue in this case is whether a public high school teacher has a First Amendment right to participate in the makeup of the school curriculum…"); *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 342 (6th Cir. 2010) (holding "that the First Amendment does not protect primary and secondary school teachers' in-class curricular speech"). This is because "[a] government entity has *broader* discretion to restrict speech when it acts in its role as employer" than it does when it acts as sovereign. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (emphasis added); *accord Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1051 (6th Cir. 2001) ("[T]he Fourth and Fifth Circuits have determined that a teacher, in choosing what he will teach his students, is not speaking as a citizen, but rather as an employee on matters of private interest.") (citing *Boring*, 136 F.3d at 368-69).

The Government's ability to regulate its employees' official job-related speech at issue in *Boring* is inapplicable to Plaintiffs' First Amendment right to challenge the library and curricular removals at issue here. The more on-point case is *Arce v. Douglas.* There, public school students challenged a statute barring school districts from providing curriculum that, inter alia, "[is] designed primarily for pupils of a particular ethnic group" – a restriction that led to the elimination of a school district's Mexican American Studies program. *Arce*, 793 F.3d at 973. The Ninth Circuit concluded that the students' First Amendment rights barred the state from removing "materials otherwise available in a . . . classroom unless its actions are reasonably related to legitimate pedagogical concerns." *Id.* at 983 (citing *Hazelwood*, 484 U.S. at 283). On remand, the District of Arizona ultimately determined that the challenged statute violated students' First Amendment right to receive curricular information. *González v. Douglas*, 269 F. Supp. 3d 948 (D. Ariz. 2017). Despite the statute's stated goal of "reduc[ing] racism in schools," a concern that the court agreed

11

was "a legitimate pedagogical objective," the court concluded that the statute in fact amounted to unconstitutional viewpoint-based curricular censorship "enacted and enforced for narrowly political, partisan, and racist reasons." *Id.* at 973.

### 2. The First Amendment provides a guardrail for curricular censorship.

The Government relies heavily on their power to dictate curriculum without judicial interference.[4] The Government is correct that "[b]y and large, public education in our Nation is committed to the control of state and local authorities." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968). However, the "state's power to prescribe a curriculum" must still be constitutionally "reasonable." *Meyer v. Nebraska*, 262 U.S. 390, 402 (1923). Thus, the Supreme Court has held that a state cannot, consistent with the Constitution, outright "forbi[d] the teaching in school of any subject except in English." *See id.* at 400. Similarly, "the First Amendment does not permit the State" to prohibit teaching the theory of evolution, "for the sole reason that it is deemed to conflict with a particular religious doctrine" held by those in power. *See Epperson*, 393 U.S. at 103, 106.

Applying those precedents here, the Government cannot remove curricular resources based solely on political ideology. It is not constitutionally appropriate for local educational authorities to "begin to substitute rigid and exclusive indoctrination for the mere exercise of their prerogative to make pedagogic choices regarding matters of legitimate dispute." *See Zykan v. Warsaw Cmty. Sch. Corp.*, 631 F.2d 1300, 1306 (7th Cir. 1980). Because the First Amendment prohibits

---

[4] The Government further suggests, relying primarily on *Boring,* that the First Amendment does not apply to curricular decisions because curriculum is government speech. That presumption cannot be reconciled with the *Boring* decision, which never even uses the term "government speech" nor is it about a parent's First Amendment right to challenge a curricular decision. Rather, as discussed above, *Boring* addresses an employee's right to make changes to the curriculum.

viewpoint-based ideological, rather than pedagogical, removals of student curriculum, the Executive Orders and implementing instructions must be enjoined.

**III.    Plaintiffs are irreparably harmed absent an injunction.**

The Government argues that Plaintiffs cannot establish irreparable harm because they "have alternative access to the books and curricular information." Opp. 27; *see also id.* at 17 n.5. In other words, because DoDEA has not banned students from reading "woke" material generally, the Government contend there is no constitutional harm. *See id.* While alternative access is an important consideration in various First Amendment contexts, it is less relevant here. *See Denver Area Educ. Telecoms. Consortium, Inc. v. FCC*, 518 U.S. 727, 809 (1996) (Kennedy, J., concurring in part and dissenting in part) ("[T]he possibility the Government could have imposed more draconian limitations on speech never has justified a lesser abridgment.").

As the Sixth Circuit recognized in another library case, the intrusion on Plaintiffs' First Amendment rights is not "minimized by the availability of the disputed book[s] in sources outside the school." *Minarcini*, 541 F.2d at 582. It stands to reason that children are less able than adults to seek out and obtain material that is removed from a library. A student's theoretical ability to obtain a book elsewhere does not mean there is no harm; at a minimum, students will need to expend time and money to track down alternative copies. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) (time lost and out-of-pocket costs incurred to mitigate harm are cognizable injuries). A preliminary injunction is appropriate and necessary to prevent further deprivation of Plaintiffs' First Amendment rights stemming from the Government's ideologically-grounded removals of books from Plaintiffs' school libraries.

The Government's alternative access argument carries even less weight when it comes to curricula, which cannot be replaced. Classroom discussions spark curiosity in children and encourage them to learn more about topics of interest; by removing material from the curricula

altogether, DoDEA denies children as young as pre-kindergarteners the chance to discover these interests in the first place. This is inconsistent with the classroom's role as a "marketplace of ideas" where students are "trained through wide exposure to that robust exchange of ideas which discovers truth 'out of a multitude of tongues, [rather] than through any kind of authoritative selection.'" *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967) (quoting *United States v. Associated Press*, 52 F. Supp. 362, 372 (S.D.N.Y. 1943), *aff'd*, 326 U.S. 1 (1945)). For example, because of the cancellation of Black History Month presentations at Barsanti Elementary, Plaintiff O.H. was unable to give her presentation on Maya Angelou and thus unable to benefit from the public speaking practice and the unique opportunity to receive feedback from her teacher and classmates. Henninger Decl. ¶ 14.

The joint removal of books and curricula stifles students' intellectual curiosity and hinders the development of critical thinking skills to achieve political aims. *See* Br. of *Amici Curiae* Fed. Educ. Ass'n and Nat'l Educ. Ass'n in Supp. of Pls.' Mot. for Prelim. Inj. (Dkt. No. 25-1) (highlighting the negative impact of DoDEA book and curricular materials on DoDEA students, teachers, and schools).

**IV.      The balance of equities and the public interest favor Plaintiffs.**

The balance of equities leans strongly in Plaintiffs' favor, and an injunction protecting their constitutional rights is in accordance with the public interest. The Fourth Circuit has recognized that the government "is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *See Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013) (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002)). "[U]pholding constitutional rights surely serves the public interest." *Giovani Carandola, Ltd.*, 303 F.3d at 521.

14

The Government argues that the school year is rapidly coming to a close and "any injunctive relief would therefore make little difference to Plaintiffs." Opp. at 28-29. However, the First Amendment injury to Plaintiffs and others is irreparable and ongoing. It is undisputed that at this very moment specific books and curricula are inaccessible to Plaintiffs. Opp. at 5-6. Even if the removal and changes are not final, DoDEA admits that books have been removed and curricula has changed based on the President's EOs. Opp. at 5-6; Opp., DEX 4 ¶ 15.

Further, Plaintiffs will soon be back in DoDEA schools for the school year beginning in August.[5] If a preliminary injunction is not granted, these removals and changes will be further entrenched during summer lesson planning. A timely preliminary injunction against the government's unconstitutional conduct would provide clarity ahead of lesson planning for the upcoming semester and avoid further injury to Plaintiffs' First Amendment rights.

## V.    Plaintiffs timely requested preliminary injunctive relief.

The Government accuses Plaintiffs of moving both too fast and too slow, but because the First Amendment injuries were ongoing, Plaintiffs' timing was appropriate. *See* Opp. at 27–28 ("Then, only a week after serving the government (i.e., three weeks after filing suit), Plaintiffs moved this Court for the extraordinary relief of a mandatory preliminary injunction."); *cf* Opp. at 27 ("Plaintiffs seek a mandatory preliminary injunction well after the five DoDEA schools began their review of their curricula and library resources."). The Government hints at, but never explicitly argue, a ripeness issue, noting that the review of books is ongoing and that DoDEA has made no final determinations as to any piece of material. *See* Opp. at 6, 8, 12, 25. However, "ripeness requirements are…relaxed in First Amendment cases" because of the potential harm stemming from deprivation of First Amendment freedoms for any period of time. *Cooksey v.*

---

[5] Dep't of Def. Educ. Activity, *supra* note 1.

*Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (rejecting argument that appellant's claim was not ripe because the government had not made a final decision). Regardless of the finality of the decisions, the initial removal of material from the school libraries' bookshelves and from classroom curricula has deprived Plaintiffs of their First Amendment rights. Plaintiffs cannot be asked to wait while their constitutional rights are being violated. There is no indication that DoDEA's review of the books to be removed or other curricula changes will be complete by the beginning of the 2025-2026 school year. In fact, administrators told the Keeley family that they can expect to have a final list of removed materials in December 2025. Keeley Decl. ¶ 23.

At the same time, Plaintiffs have diligently pursued their claims and requested relief, and the Government has not been prejudiced by Plaintiffs' time to file both their Complaint and Motion for a Preliminary Injunction. The President issued Executive Orders 14168, 14185, and 14190 on January 20, January 27, and January 29, respectively. On January 31, the Department of Defense issued guidance regarding its implementation of the EOs. PI Decl., Ex. 16 (Dkt. No. 10-18). On February 5, 2025, the Acting Chief Academic Officer of DoDEA sent a letter to administrators that DoDEA would begin its "operational compliance review to ensure alignment with the applicable Executive Orders." PI Decl., Ex. 10 (Dkt. No. 10-12). DoDEA began its review of the materials in February and completed the preliminary identification of materials for review on March 7. Plaintiffs filed the Complaint on April 15. Opp. at 27. Given the fact-intensive nature of this case, including the dynamic on-the-ground implementation of the guidance, the need to identify plaintiffs and gather facts from several witnesses in multiple countries, and the multiple attempts by parents to learn exactly which materials were being removed from the libraries, this is a perfectly reasonable timeline.

By contrast, a plaintiff has displayed a lack of diligence where they "delayed inexcusably or unreasonably in filing suit." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (quoting *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987)). "An inexcusable or unreasonable delay may occur *only after* the plaintiff discovers or with reasonable diligence could have discovered the *facts* giving rise to his cause of action." *Id.* (emphasis added). In the cases the Government cites, for example, the court found inexcusable delay where plaintiffs sat on their rights for months or even years. *See Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (motion for preliminary injunction filed almost four years after original complaint); *N.C. State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 310 n.9 (4th Cir. 2020) (nine months between complaint and motion for preliminary injunction); *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) (plaintiff waited over four months to bring claim and such delay prejudiced defendants).

## VI.    Plaintiffs should not be required to post bond.

District courts have discretion to set a bond amount "'in such sum as the court deems proper[.]'" *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999) (quoting Fed. R. Civ. P. 65(c)). As the Government's brief states, Opp. at 29, in a preliminary injunction order, courts must analyze whether petitioners are required to pay bond. *Id.* But the Fourth Circuit has long noted that in some circumstances, bond may be set at a nominal value or waived altogether. *Hoechst,* 174 F.3d at 421 n. 3; *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-CV-00333-ABA, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025), opinion clarified, No. 25-CV-0333-ABA, 2025 WL 750690 (D. Md. Mar. 10, 2025); *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013) ("[T]he district court retains the discretion to set the bond amount as it sees fit or waive the security requirement.").

Courts in this circuit have waived the bond requirement when a fundamental constitutional right is at stake and where the bond requested "would be an enormous financial barrier." *Nat'l*

17

*Ass'n of Diversity Officers in Higher Educ.,* 2025 WL 573764, at *30. Here, the First Amendment rights of Plaintiffs are at stake. Though the Government does not request a specific amount of bond and point to no analogous cases requiring bond, they state it should "reflect the disruption caused to DoDEA to recalibrate its school curricula." Opp. at 29-30. Plaintiffs are twelve children from six military families. If they were required to pay bond sufficient to reimburse DoDEA for potential curriculum changes, it would undoubtedly create an "enormous financial barrier" and they would be unlikely to bring this litigation at all. For these reasons, bond should be waived.

## VII.     Any preliminary injunction should apply across DoDEA.

Plaintiffs bring facial and as-applied challenges to DoDEA's book and curriculum censorship. A systemwide injunction is appropriate because the Executive Orders and DoDEA's implementation actions facially violate the First Amendment, causing systemwide harm. The government argues that any injunction should be limited to the five schools Plaintiffs attend, citing *Califano v. Yamasaki* for the proposition that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." 442 U.S. 682, 702 (1979). But the Supreme Court has recognized that to provide complete relief to a plaintiff, a court must take account of "what is necessary, what is fair, and what is workable," in accordance with "well-known principles of equity." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017) (internal quotation marks and citations omitted).

Here, a systemwide injunction is especially necessary to provide Plaintiffs complete relief because, as a function of being children of military members subject to transfers, Plaintiffs may be required to change schools at any time. Keeley Decl. ¶¶ 3, 5; Kenkel Decl. ¶ 4; Henninger Decl. ¶¶ 4-5; Tolley Decl. ¶¶ 4, 16; Young Decl. ¶ 4 (Dkt. No. 10-25). If the injunction were not systemwide and any Plaintiff were required to transfer schools, as they have frequently been required to do in the past, the Plaintiff would again be unable to access banned curricula and books.

18

## <u>CONCLUSION</u>

For the reasons briefed, Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated: May 30, 2025                              Respectfully submitted,

*/s/ Matthew Callahan*
Matthew Callahan, VSB No. 99823
Eden Heilman, VSB No. 93554
ACLU of Virginia Foundation
P.O. Box 26464
Richmond, VA 23261
(804) 644-8080
mcallahan@acluva.org
eheilman@acluva.org

Emerson J. Sykes
Tyler Takemoto*
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
esykes@aclu.org
ttakemoto@aclu.org

Corey M. Shapiro
William E. Sharp
ACLU of Kentucky Foundation
325 W. Main Street, Suite 2210
Louisville, KY 40202
(502) 581-9746
corey@aclu-ky.org
wsharp@aclu-ky.org

*Attorneys for Plaintiffs*

\* Motion for *pro hac vice* admission forthcoming