UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| E.K. and S.K., minors, by and through their parent and next friend, LINDSEY KEELEY, *et al.*, )<br>)<br>)<br>)<br>             Plaintiffs, )<br>)<br>   v. )<br>)<br>DEPARTMENT OF DEFENSE EDUCATION ACTIVITY, *et al.*, )<br>)<br>)<br>             Defendants. ) | Case No. 1:25-cv-637 (PTG/IDD) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION**

Pursuant to Federal Rule of Civil Procedure 54(b), Defendants respectfully request that this Court reconsider its June 3, 2025 Order for Defendants to produce a list of library books currently under review within the Department of Defense.

**INTRODUCTION**

Defendants respectfully seek reconsideration of the Court's June 3, 2025 oral order directing Defendants to submit the list of books subject to ongoing reviews to the Court and to Plaintiffs. There are two rationales to support reconsideration. *First*, as this case is in the preliminary injunction posture, the Court is constrained to rule on the legal and factual issues only as presented by the parties. Because the parties are in full agreement that the list of books in Defendants' ongoing reviews is wholly unnecessary for resolving Plaintiffs' pending motion for a preliminary injunction, the Court should not review it as a part of its adjudication of the pending motion. *Second*, the problems associated with requiring the list, which is not required to adjudicate the motion for preliminary injunction, is compounded here because the list is protected from

1

disclosure by the deliberative process privilege. To that end, Defendants should be excused from sharing that list with Plaintiffs.

Defendants raise two proposals in the alternative, should the Court not fully relieve Defendants of the obligation to provide the list on or before June 16, 2025, the date the Court has ordered Defendants to provide the list. The first alternative is for Defendants to provide the list to the Court *ex parte* for *in camera* review of the privilege assertion. The second alternative is for the Court to stay the requirement for Defendants to produce the list pending resolution of the motion for reconsideration.

## BACKGROUND

Invoking the First Amendment's Free Speech clause, twelve schoolchildren attending five Department of Defense Education Activity ("DoDEA") schools bring two claims in connection with the curriculum changes and book reviews that followed the implementation of various Presidential Executive Orders and a Secretarial Memorandum. Plaintiffs moved for a preliminary injunction on May 7, 2025, and submitted twenty-five exhibits to support that motion. *See generally* Dkt. 10. At no point did Plaintiffs seek advanced discovery before moving for a preliminary injunction—that alone effectively indicates that Plaintiffs believe that they have presented sufficient factual evidence to the Court to justify their requested relief.

As the Court is well aware, the Court heard argument on Plaintiffs' motion for a preliminary injunction on June 3, 2025. Dkt. 37. The Court did not conduct an evidentiary hearing and only heard legal arguments from the parties' counsel. During the argument, Plaintiffs faulted Defendants for not providing the list of books subject to the ongoing review. Tr. at 7:24-25. Though Plaintiffs advanced that critique, they made it unequivocally clear that they did not need this list to prosecute their claims: "At the same time, our claims *are not dependent* on getting the

particular titles that are on that list." Tr. at 17:1-2 (emphasis added). "[W]hat's on the list is important to us, but we don't think it's necessary for our case to proceed." Tr. at 17:6-7. Notwithstanding Plaintiffs' clear admission that the list is not necessary for their claims, the Court directed Defendants to have the list "submitted to the Court." Tr. at 32:22. The Court further specified that the list was also to be "made available to plaintiffs," Tr. at 33:3, by filing the list on the docket of this action. Tr. at 33:7-9. Defendants moved for an extension of time to produce the list, Dkt. 38, to and including June 16, 2025, which the Court granted, Dkt. 40.

Defendants now respectfully seek reconsideration of the Court's order of June 3, 2025 and seek to be relieved of the obligation to provide the Court and Plaintiffs with the list. The Court's June 3, 2025 Order enlarges the factual record beyond what is necessary to resolve Plaintiffs' motion for a preliminary injunction and it requires Defendants to disclose information that they assert is privileged.[1]

## LEGAL STANDARD

The Court's June 3, 2025 Order directing Defendants to provide the list of books under review to the Court and Plaintiffs is an interlocutory order, as it did not resolve the merits of the case. As an interlocutory order, "[t]he proper vehicle for requesting reconsideration . . . is Federal Rule of Civil Procedure 54(b)." *Orbcomm, Inc. v. Calamp Corp.*, 215 F. Supp. 3d 499, 503 (E.D. Va. 2016) (citing *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1470 (4th Cir. 1991)). Unlike a motion for reconsideration under Rules 59(e) or 60(b), a motion for reconsideration under Rule 54(b) is "not subject to the strict standards applicable to motions for reconsideration of a final

---

[1] Given the timing of this motion, Defendants have not contacted Plaintiffs regarding their position on this motion. However, Defendants reasonably anticipate that Plaintiffs would oppose such relief as they also represented during the June 3 hearing that they "would not object, if the Court . . . requires the government to disclose that list." Tr. at 16:24-25.

3

judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). That is because "a district court retains the power to reconsider and modify its interlocutory judgments . . . *at any time* prior to final judgment." *Id.* at 514-15 (emphasis added).

Courts in this district nonetheless look to the same factors that govern motions to reconsider under Rules 59(e) and 60(b) when analyzing a motion to reconsider under Rule 54(b). *See Orbcomm*, 215 F. Supp. 3d at 503; *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015); *McAfee v. Boczar*, 2012 WL 2505263, at *2 (E.D. Va. June 12, 2012). Under this guidance, a court will see fit to reconsider a prior interlocutory order when: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Evans*, 148 F. Supp. 3d at 544 (quoting *Am. Canoe Ass'n*, 326 F.3d at 514).

## ARGUMENT

**I. The Court should completely relieve Defendants of the obligation to provide the list of books to the Court and Plaintiffs.**

The Court should reconsider its Order for Defendants to provide the list of books to the Court and Plaintiffs and relieve Defendants of this obligation entirely. First, because this matter comes to the Court at the preliminary injunction stage, the Court may not request evidence beyond what is necessary to resolve the preliminary injunction. Second, this problem is compounded by the assertion of the deliberative process privilege over this non-final list.

A.  Given the unique nature of preliminary injunction proceedings, this Court cannot enlarge the factual record beyond what the parties have concluded is necessary for resolution of the motion. A request for a preliminary injunction draws on the Court's equitable powers, and as such, is separate from a final substantive determination on the merits of a plaintiff's claims.

4

*Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 52 (7th Cir. 1980). To that end, resolution of legal matters and factual findings "should not go beyond the necessities of the preliminary stage of the case." 9C Fed. Prac. & Proc. Civ. § 2576 *Requirements of Findings— Injunctions* (3d ed.). After all, "[t]he findings of fact and conclusions of law by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, a district court errs when it makes factual findings or imports evidence into a preliminary injunction ruling that neither party has identified to be necessary to resolving the pending motion. *See Toregas v. Susser*, 290 F.2d 368, 368 (D.C. Cir. 1961); *Indus. Bank of Wash. v. Tobriner*, 405 F.2d 1321, 1324 (D.C. Cir. 1968). That is why the parties can stipulate to the factual record necessary for resolving the preliminary injunction and the district court does not err if it relies on the stipulated universe of facts. *See Johnston v. J.P. Stevens & Co.*, 341 F.2d 891, 892 (4th Cir. 1965). That is also why, "in order to justify expedited discovery" at the preliminary injunction stage, a plaintiff must submit discovery requests "targeted or otherwise tailored to obtaining injunctive relief, and not simply be addressed to the ultimate merits of plaintiff's claims." *Merz N. Am. Inc. v. Viveve Med. Inc.*, 2017 WL 11613694, at *2 (E.D.N.C. May 5, 2017); *see also 2311 Racing LLC v. Nat'l Assoc. for Stock Car Auto Racing, LLC*, 2024 WL 4919420, at *3 (W.D.N.C. Oct. 31, 2024) ("When a party is seeking expedited discovery in connection with a request for a preliminary injunction, the discovery requests should be narrowly tailored to focus on information believed to be probative to the preliminary injunction analysis." (quotation omitted)). All told, the Court's universe of consideration is limited to non-privileged factual matters and legal issues that are germane to resolve whether Plaintiffs are entitled to emergency relief.

Considering the parties' binding admissions, the list of books under review is not necessary to rule on Plaintiffs' motion for a preliminary injunction. Indeed, at the preliminary injunction hearing, Plaintiffs made plain that their "claims are not dependent on getting the particular titles that are on that list" and that the list was not "necessary for our case to proceed." Tr. at 17:1-2, 6-7. For the avoidance of doubt, Defendants similarly agree. With the factual record therefore complete, the Court is therefore able to proceed to resolving the preliminary injunction. There is no need to introduce more facts that are unnecessary to the resolution of the matter.

B.  This is especially the case given that the Department of Defense considers the list to be pre-decisional, deliberative, and subject to the deliberative process privilege. And although the sensitive nature of the document only highlights the above argument about the nature of the evidentiary record on Plaintiffs' motion for a preliminary injunction, it also serves as an independent argument in favor of reconsideration.

The deliberative process privilege is a form of executive privilege. *U.S. Fish & Wildlife Service v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). It "shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]" *Id.* (quotation omitted). It rests on "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* (quotation omitted). To justify application of the privilege, the context in which the materials at issue were used must be "both pre-decisional and deliberative." *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 329 (4th Cir. 2016). "Pre-decisional documents are those prepared in order to assist an agency decisionmaker in arriving at his decision, and deliberative documents are those that reflect the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative

6

policies or outcomes." *Id.* (cleaned up). "The privilege thus protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (emphasis omitted).

The list of books under review that the Court has requested for submission is both pre-decisional and deliberative.

***Pre-decisional***. As explained in the declarations filed contemporaneously with Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 29), Timothy D. Dill will make the final decision on which books will be removed. Dill, the Senior Official Performing the Duties of the Assistant Secretary of Defense (Manpower & Reserve Affairs), has oversight authority of DoDEA. First Dill Decl. (Dkt. 29-2) ¶ 4. It is unequivocal that he has not made the final decision on which books will be permanently removed from DoDEA's libraries. *Id.* ¶ 10 ("DoDEA's review of certain of its information center and curricular resources is ongoing."); *see also* Schiavino-Narvaez Decl. (Dkt. 29-3) ¶ 12 ("At this time, no recommendations for the final disposition of the materials subject to this review have been proffered to me or [Dill]."). Nor had Dill, the official with authority to make the decision for the agencies on this matter, seen any iteration of the list until its disclosure was ordered by this Court. Second Dill Decl. ¶ 5.

That the list represents some books which have already been removed from DoDEA libraries pending further review does not vitiate the deliberative process privilege. "What matters . . . is not whether a document is last in line, but whether it communicates a policy on which the agency has settled." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 268. Whether a document reflects "the agency's settled position" requires courts to consider "whether the agency treats the document as its final view on the matter." *Id.* "By contrast, a document that leaves agency decisionmakers free to change their minds does not reflect the agency's final decision." *Id.* Here,

the list can hardly be "settled" agency policy, when the agency's final decision maker does not have a set of recommendations from his subordinates to consider, *see* First Dill Decl. ¶ 10 (Dkt. 29-2); Schiavino-Narvaez Decl. ¶ 12 (Dkt. 29-3), let alone make any final determinations of disposition.

In *Fish and Wildlife*, the Supreme Court considered whether the deliberative process privilege applied to draft biological opinions provided by the U.S. Fish and Wildlife Service and the National Marine Fisheries Service (together, "the Services") to the Environmental Protection Agency ("EPA") on a proposed rule that EPA drafted. *U.S. Fish & Wildlife Serv.*, 592 U.S. at 264. The draft opinions were never approved by decision makers at the Services or sent to the EPA. *Id.* at 265. Instead, the Services and EPA continued informal consultations, which were informed by the draft opinions, and resulted in EPA scrapping its proposed rule and promulgating a revised rule. *Id.* at 266. The Sierra Club filed a Freedom of Information Act request for the draft opinions, the Services withheld the drafts on the basis of the deliberative process privilege, and the Sierra Club sued. "To determine whether the privilege applies," the Supreme Court wrote in affirming application of the deliberative process privilege, "we must evaluate not whether the drafts provoked a response from the EPA but whether the Services treated them as final. They did not." *Id.* at 271. The Supreme Court reasoned that the drafts were prepared by "lower-level staff" and then sent to decision makers at the Services for approval, thus making the opinions at issue "a draft of a draft." *Id.* at 271-72. Noting that the inquiry of whether an agency's decision is final is "a functional rather than formal" one, *id.* at 788, the administrative context in which the draft biological opinions were developed "confirms that the drafts are what they sound like: opinions that were subject to change." *Id.* at 269.

Here, the agency decision maker, Dill, is free to accept or reject the recommendations that percolate up through DoDEA via its Director. *See* First Dill Decl. ¶ 10 ("The DoDEA Director will provide her assessment of the recommended final disposition of these materials, including analysis from the panel, to [Dill] for final review and approval of the disposition of these materials."). While Dill relies on "DoDEA's subject matter expertise in childhood education and school administration when developing and implementing policy directives impacting DoDEA schools"—and will do so in the case of determining which books will be permanently removed—he alone will make the final call as to the books to be removed. First Dill Decl. ¶¶ 7, 10. Like the drafts at issue in *Fish & Wildlife*, "the administrative context" confirms that the list is simply "opinions that [are] subject to change." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 269.

As Dill explained in formally invoking the deliberative process privilege here, the agency does not consider the list as it currently stands to represent the final decision or final agency action about what books will be removed. Second Dill Decl. ¶¶ 4-5. For the document to be considered "final," it must reflect "the consummation of the agency's decisionmaking process and not a merely tentative position." *See id.* at 268 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)); *see also Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*, 325 F. Supp. 3d 162, 173 (D.D.C. 2018) (holding talking points protected by deliberative process privilege because "the 'final' version of talking points prepared by more junior staffers for a more senior official is rarely the final decision about what the senior official will say"); *Friends of Lydia Ann Channel v. Lydia Ann Channel Moorings, LLC*, 2020 WL 1434706, at *5 (S.D. Tex. Mar. 24, 2020) ("Intermediate steps of a multi-stage administrative process, even if completed, are not final actions."). This distinction is illustrated in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), in which the Supreme Court considered whether certain advice and appeals memoranda—functionally the same document but

9

with different practical effects—should be protected by the deliberative process privilege. The Court held that memoranda which explained the decision by the NLRB's General Counsel not to file a complaint for unfair labor practices (and thus ended any future litigation) were final, whereas those memoranda that recommended filing a complaint (and thus initiating litigation) were pre-decisional and protected by the privilege. *Id.* at 148. "In the case of decision not to file a complaint, the memoranda effect as 'final' a 'disposition' as an administrative decision can—representing, as it does, an unreviewable rejection of the charge filed by the private party." *Id.* at 155. In contrast, the filing of a complaint "does not finally dispose even of the General Counsel's responsibility with respect to the case." *Id.* at 159. "At the same time, the public's interest in disclosure is substantially reduced by the fact . . . that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board." *Id.* at 160.

Here, the list in its current form is a series of preliminary recommendations that is still being developed iteratively and that will be provided to Dill, the decisionmaker. It does not represent a "rejection" or even acceptance by Dill of the contents of the list and therefore does not represent the agency's final view on books to be removed. The list of books to be removed is therefore pre-decisional.

***Deliberative***. The list in its current format is comprised of "opinions that [are] subject to change." *U.S. Fish & Wildlife Serv.*, 592 U.S. at 269. As stated in the declarations filed with Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, the review of books to be removed is "ongoing." First Dill Decl. ¶ 10; *see also* Schiavino-Narvaez Decl. ¶¶ 11-12; Linton Decl. ¶ 18. It is an "iterative" process and is "dynamic as front-line reviewers continue to recommend books for the list" for a variety of reasons, like the arrival of previously-ordered books. Second Dill Decl. ¶ 4. This process begins at the school level, with librarians and other local

10

education professionals identifying books to be reviewed. Linton Decl. ¶¶ 14-17 (Dkt. 29-4). Those books are reviewed by subject matter experts in each content area, who provide an initial recommendation for each book within DoDEA. Linton Decl. ¶ 17. Division Chiefs and the Office of Civil Rights also review the books as well as initial recommendations. *Id*. Books will be reviewed once more during a "focused review" before a recommendation is made to the DoDEA Director, Linton Decl. ¶ 19, who will in turn make her own assessment and recommendation to Dill, the decisionmaker. Schiavino-Narvaez Decl. ¶¶ 11-12, First Dill Decl. ¶ 10. In other words, the list is currently under development by staffers, whose ability to communicate freely about the non-final list would be severely compromised by premature disclosure of it. *See Leopold v. U.S. Dep't of Just.*, 2021 WL 3128866, at *4 (D.D.C. July 23, 2021) ("[R]elease of these discussions, especially given the high-profile and sensitive nature of this case, would dampen the free exchange of ideas within the agency."). As Dill has now testified, Second Dill Decl. ¶ 8, the release of the document at this pre-decisional stage will have a chilling effect, deterring DoDEA personnel from exercising appropriate candor in making recommendations within the agency. *See, e.g.*, *Emuwa v. DHS*, 113 F.4th 1009, 1016 (D.C. Cir. 2024) (holding that the "'chilling of candid advice' is the precise harm that the deliberative process privilege seeks to prevent" (quoting *Machado Anadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020))).

*Procedural requirements*. "There are three procedural requirements for assertion of the privilege: 1) the agency head must assert the privilege; 2) the agency head must state with particularity the information subject to the privilege; and 3) the agency must aver precise and certain reasons for preserving the confidentiality of the requested documents." *Hugler v. Bat Masonry Co., Inc.*, 2017 WL 1207847, at *3 (W.D. Va. Mar. 31, 2017). All three requirements have been satisfied in this case. Dill testified under oath that he was invoking the privilege with

11

respect to the list, satisfying the first and second requirements for invocation of the privilege. Second Dill Decl. ¶¶ 1-2, 9. As to the third factor, Dill also has testified that "the provision of this iterative list outside of the Department would have a chilling effect on DoDEA professionals—and others inside the Department—as they seek to provide me with their best recommendations based on their educational background and experience." Second Dill Decl. ¶ 8.

Thus, Defendants have established both the legal and procedural bases to assert the privilege over the list.

## II. Should the Court not decide the motion for reconsideration before June 16, 2025, Defendants propose two alternatives.

Should the Court not fully relieve Defendants of the obligation to file the list, Defendants propose two alternatives. The first alternative is Defendants can provide the list to the Court *ex parte* for *in camera* review, consistent with common practice in the event that a court concludes that it needs to review the document in order to adjudicate the validity of a privilege assertion. The second alternative is for the Court to stay its order to produce the list until the motion for reconsideration has been resolved.

### A. First Alternative: Defendants file the list of books *ex parte* for *in camera* review.

As an alternative, the Court should effectively grant leave to file the list *ex parte* for *in camera* review.

Courts have often accepted documents under seal and *ex parte* pending a determination of privilege. *See, e.g.*, *Franzone v. Lask*, 2015 WL 1379066, at *7 (S.D.N.Y. Mar. 26, 2015) ("*In camera* review is 'a practice both long-standing and routine in cases involving claims of privilege.'" (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003))); *Zivali v. AT&T Mobility LLC*, 2010 WL 5065963, at *1 (S.D.N.Y. Dec. 6, 2010) (permitting party to file "any *ex parte* declarations necessary to establish the basis for the

12

claims of privilege"); *Comcast of Ill. X, LLC v. Multivision Elecs., Inc.*, 2007 WL 1527849, at *2 (E.D. Mo. May 23, 2007) (noting court considered *ex parte* and under seal affidavit containing information about a substantive communication with counsel); *Fed. Election Comm'n v. Christian Coal.*, 178 F.R.D. 61, 64–65 (E.D. Va.), *order aff'd in part, modified in part*, 178 F.R.D. 456 (E.D. Va. 1998) ("[T]he court, over objection by the FEC, allowed CBN to submit *ex parte* for *in camera* inspection a Declaration from a C&L officer who provided additional clarifying information about the documents.").

*Ex parte* consideration is warranted to avoid any implication that Defendants might waive its position on the applicability of the deliberative process or any other privilege by filing the requested list on the public docket or even providing the list to Plaintiffs outside of the public docket. Moreover, absent any further intervention from the Court, filing the requested list on the public docket would prevent Defendants from limiting the distribution of this information. Thus, in the event the Court declines to reconsider its directive to file the list, Defendants ask in the alternative that they can file the list *ex parte* to ensure that any asserted privilege is protected until a final determination from the Court.

### B. Second Alternative: The Court stay its order to produce the list pending resolution of the motion for reconsideration.

The second alternative is for the Court to stay its order to produce the list pending resolution of the motion for reconsideration. "A district court has the 'inherent power' to stay a pending action to ensure both the 'efficient management of [its] docket[],' as well as 'economy of time and effort for itself, for counsel, and for litigants.'" *Hawley v. Johnson & Johnson*, 2011 WL 7946243, at *1 (E.D. Va. Apr. 29, 2011) (quoting *Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983)). It follows, then, that the Court has inherent authority to stay its own order. Borrowing the factors a court should consider when adjudicating staying an entire case— "(1) the

13

interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party"—all three are met here. *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) (internal quotation marks omitted). It is in the interests of judicial economy to resolve the motion for reconsideration before requiring production of the list, especially where, as here, Defendants have asserted privilege over that list. As noted *supra*, Plaintiffs will not be prejudiced by staying the order, as they conceded at the hearing the list is not necessary for the Court to adjudicate the motion for preliminary injunction. Conversely, the hardship to Defendants is great and the equities favor them, as the Order forces Defendants to release a document over which they assert privilege. Accordingly, as an alternative, the Court should stay its order requiring Defendants to produce the list.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its June 3, 2025 Order.

Dated: June 11, 2025

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By:     /s/
MEGHAN E. LOFTUS
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3757/3741
Fax:    (703) 299-3983
Email: meghan.loftus@usdoj.gov
           matthew.mezger@usdoj.gov

*Counsel for Defendants*

14