# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| E.K. and S.K., minors, by and through their parent and next friend LINDSEY KEELEY;  O.H., S.H., and H.H., minors, by and through their parent and next friend JESSICA HENNINGER;  E.G., a minor, by and through his parent and next friend MEGAN JEBELES;  E.Y. and C.Y., minors, by and through their parent and next friend ANNA YOUNG;  L.K., L.K., and L.K., minors, by and through their parent and next friend ANNA KENKEL; and M.T., a minor, by and through her parent and next friend NATALIE TOLLEY, | Case No. 1:25-cv-00637-PTG-IDD<br><br>Hon. Patricia Tolliver Giles |
|         Plaintiffs, |  |
| v. |  |
| DEPARTMENT OF DEFENSE EDUCATION ACTIVITY; DR. BETH SCHIAVINO-NARVAEZ, in her official capacity as Director of the Department of Defense Education Activity; and PETER BRIAN HEGSETH, in his official capacity as Secretary of Defense, |  |
|         Defendants. |  |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

LEGAL STANDARD ............................................................................................. 1

ARGUMENT .......................................................................................................... 2

    I.      Plaintiffs have standing to bring this action.......................................... 2

          A.    Plaintiffs have standing to challenge DoDEA's book removals and Plaintiffs' claims are ripe. ....................................................... 3

          B.    Plaintiffs have standing to challenge DoDEA's curricula removals. ........ 6

    II.     Plaintiffs sufficiently stated a claim..................................................... 7

          A.    Plaintiffs sufficiently pled that DoDEA's book removals violate Plaintiffs' First Amendment rights. ................................................. 7

               i.    Plaintiffs adequately pled that books have been removed............. 7

               ii.    Plaintiffs adequately pled that the goal of removals is to censor disfavored ideas. ................................................................. 7

               iii.   Plaintiffs adequately alleged lack of a legitimate government interest. ................................................................. 8

               iv.   Plaintiffs adequately pled that they are specifically harmed by the removals. ................................................................. 9

               v.    SCOTUS and decades of precedent hold that students' First Amendment rights are implicated under these facts. .................. 10

          *B.*    Plaintiffs sufficiently pled that DoDEA's curricular removals violate Plaintiffs' First Amendment rights. ............................................. 12

               i.    The government speech defense is inapposite for student First Amendment claims. ................................................................. 12

               ii.    The curricular removals do not meet the Hazelwood test because they are not based on "legitimate pedagogical concerns."................................................................................. 15

               iii.   Plaintiffs' Complaint was well-pled. ........................................... 16

    CONCLUSION.................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arce v. Douglas*,
  793 F.3d 698 (9th Cir. 2015) ............................................................6, 7, 15

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982) (plurality opinion) .......................................... *passim*

*Beard v. Banks*,
  548 U.S. 521 (2006) (plurality opinion) .....................................................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................1

*Case v. Unified Sch. Dist. No. 233*,
  895 F. Supp. 1463 (D. Kan. 1995) ..........................................................10

*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005) .............................................................12, 13

*Cousins v. Sch. Bd. of Orange Cnty., Fla.*,
  687 F. Supp. 3d 1251 (M.D. Fla. 2023) ....................................................1

*Counts v. Cedarville Sch. Dist.*,
  295 F. Supp. 2d 996 (W.D. Ark. 2003)...............................................9, 11

*Davison v. Randall*,
  912 F.3d 666 (4th Cir. 2019) ..................................................................11

*Edwards v. Aguillard*,
  482 U.S. 578 (1987)................................................................................13

*Epperson v. Arkansas*,
  393 U.S. 97 (1968)..................................................................................14

*Fleming v. Jefferson Cnty. Sch. Dist. R-1*,
  298 F.3d 918 (10th Cir. 2002) ..................................................................6

*GLBT Youth in Iowa Schs. Task Force v. Reynolds*,
  114 F.4th 660 (8th Cir. 2024) ............................................................11, 12

*González v. Douglas*,
  269 F. Supp. 3d 948 (D. Ariz. 2017) .......................................................16

*Griswold v. Driscoll*,
  616 F.3d 53 (1st Cir. 2010) ..................................................................................12

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988) ........................................................................ *passim*

*Little v. Llano Cnty.*,
  138 F.4th 834 (5th Cir. 2025) ...........................................................................2

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...........................................................................................2

*Matal v. Tam*,
  582 U.S. 218 (2017) .........................................................................................12

*Meyer v. Nebraska*,
  262 U.S. 390 (1923) .........................................................................................14

*Minarcini v. Strongsville City Sch. Dist.*,
  541 F.2d 577 (6th Cir. 1976) ........................................................................4, 11

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024) ...........................................................................................8

*Penguin Random House LLC v. Robbins*,
  774 F. Supp. 3d 1001 (S.D. Iowa 2025) ...........................................................10

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
  641 F. Supp. 3d 1218 (N.D. Fla. 2022) ..............................................................7

*Planned Parenthood of S.C. Inc. v. Rose*,
  361 F.3d 786 (4th Cir. 2004) ...........................................................................12

*Right to Read Def. Comm. v. Sch. Comm.*,
  454 F. Supp. 703 (D. Mass. 1978) ....................................................................11

*Robbinette v. Lockhart*,
  No. 7:17CV00053, 2018 WL 11462840 (W.D. Va. Feb. 15, 2018) ....................9

*Roberts v. Madigan*,
  702 F. Supp. 1505 (D. Colo. 1989), *aff'd*, 921 F.2d 1047 (10th Cir. 1990) ...........11

*Romer v. Evans*,
  517 U.S. 620 (1996) ...........................................................................................9

*Roncales v. Cnty. of Henrico*,
  451 F. Supp. 3d 480 (E.D. Va. 2020) ................................................................2

*Rossignol v. Voorhaar*,
    316 F.3d 516 (4th Cir. 2003) ................................................11

*Salvail v. Nashua Bd. of Educ.*,
    469 F. Supp. 1269 (D.N.H. 1979) ...........................................11

*Satellite Broad. & Commc'ns Ass'n v. FCC*,
    275 F.3d 337 (4th Cir. 2001) ................................................11

*Sheck v. Baileyville Sch. Comm.*,
    530 F. Supp. 679 (D. Me. 1982) .............................................11

*Shurtleff v. City of Boston*,
    596 U.S. 243 (2022)..............................................12, 13, 14

*Suri v. Trump*,
    No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025)..........................5

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) .................................................1

*Virden v. Crawford Cnty.*,
    No. 2:23-CV-2071, 2024 WL 4360495 (W.D. Ark. Sep. 30, 2024).....................10

*Virgil. v. Sch. Bd. Of Columbia Cnty., Fla.*,
    862 F.2d 1517 (11th Cir. 1989) ..............................................6, 7

*Zykan v. Warsaw Cmty. Sch. Corp.*,
    631 F.2d 1300 (7th Cir. 1980) ...............................................15

iv

## INTRODUCTION

Plaintiffs have adequately alleged facts to support standing and have pled clear First Amendment claims rooted in decades of precedent. The Government's Motion to Dismiss puts forward a radical interpretation of students' First Amendment rights in public schools. Based on inapposite, non-binding, and misconstrued outlier cases, the Government promotes a theory that would entirely foreclose student claims with regard to book quarantines from school libraries and curricular removals. The Government's reading of the First Amendment cannot prevail and this case must proceed. In the normal course, school officials curate libraries and choose curricula according to their best educational judgment and there is no need for courts to intervene. But the current situation in Department of Defense Education Activity ("DoDEA") schools is not normal. President Trump's politically-charged Executive Orders targeting "gender ideology" and "discriminatory equity ideology" among other disfavored viewpoints, were implemented expeditiously by DoDEA which removed nearly 600 titles from school libraries in a matter of a few months. The First Amendment prevents this sort of draconian censorship that would make public school curricula vulnerable to the whims of non-educator, political actors.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must only "nudge[ ] [its] claims across the line from conceivable to plausible[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations are plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tobey v. Jones*, 706 F.3d 379, 386 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (finding that plaintiff plausibly alleged his First Amendment rights were violated). When assessing whether a plaintiff's claims are plausible, the court must "assume all well-pleaded factual allegations to be

true and determine whether, viewed in the light most favorable to the plaintiff, they 'plausibly give rise to an entitlement to relief.'" *Roncales v. Cnty. of Henrico*, 451 F. Supp. 3d 480 (E.D. Va. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)) (finding that plaintiff alleged facts sufficient to state a First Amendment retaliation claim). Plaintiffs have far exceeded the plausibility requirement here. In fact, Plaintiffs have demonstrated a likelihood of success on the merits for their First Amendment claims in support of their Motion for a Preliminary Injunction. Dkt. 9; Dkt. 10; Dkt. 36. Plaintiffs hereby incorporate by reference the legal arguments set forth in those papers.

## ARGUMENT

### I.    Plaintiffs have standing to bring this action.

Plaintiffs have adequately alleged (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to Defendants' actions; and (3) a likelihood that the injury will be redressed by a favorable decision for both their book removal and curriculum claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs are twelve students from six families currently attending DoDEA-operated schools within the United States and around the world. Compl. ¶ 4. Plaintiffs allege that the Government has "quarantined" hundreds of books and banned dozens of curricular materials to comply with the President's Executive Orders targeting race and gender in violation of students' First Amendment right to receive information. Compl. ¶¶ 1–3. Plaintiffs are suffering ongoing and irreparable injury as a result of the government's knee-jerk removal of library books and changes to school curricula. Compl. ¶ 5. Were this Court to enjoin Defendants' removals and require books and curricula to be reinstated in DoDEA schools, Plaintiffs' injuries would be redressed. Compl. ¶ 82.

**A.    Plaintiffs have standing to challenge DoDEA's book removals and Plaintiffs' claims are ripe.**

It is now a matter of public record that the Government has removed nearly 600 books about race and gender from DoDEA school libraries. Memorandum Order, Dkt. 54 at Attachment A (July 11, 2025). Plaintiffs have adequately alleged that their access to books in school libraries has been and continues to be restricted due to DoDEA's implementation of the Executive Orders. Compl. ¶¶ 32–49. This restricted access has harmed Plaintiffs because they place significant importance on having access to a diverse collection of books in their school libraries, including books that address race and gender. Compl. ¶¶ 70, 76, 77, 79–81. Furthermore, the Department of Defense ("DoD") and DoDEA have stated repeatedly in a series of memoranda to staff and parents that the book removals are taking place for ideological, rather than pedagogical, reasons. Compl. Exs. 4–9.

On February 5, 2025, Lori Pickel, Acting Chief Academic Officer for DoDEA, circulated a memorandum to DoDEA educators, administrators, and staff requiring schools to review their libraries and remove "books potentially related to gender ideology or discriminatory equity ideology topics" from circulation. Compl. Ex. 4. Two days later, DoDEA Europe issued a substantially similar memorandum. Compl. Ex. 5. Over the next couple months, DoDEA issued internal letters and memoranda calling for the removal of these ideologies in DoDEA schools. Compl. Exs. 6–9. One training at a high school in Germany instructed school librarians to remove a book because it "refers to transgender." Compl. Ex. 9 at 11.

The Government argues that Plaintiffs failed to establish standing because they "failed to put forward any factual basis to establish that they sought the information temporarily withdrawn from DoDEA's bookshelves[.]" Dkt. 49 at 12. The Government erroneously states that "none of the twelve Plaintiffs have made any showing that they have an interest in reading the books under

review," *id.,* ignoring the Complaint's well-pled facts. Plaintiffs have put forth much more than a "generalized grievance" to establish injury-in-fact. Dkt. 49 at 13. Plaintiffs' allegations of harm include but are not limited to the following: (1) they cannot "read[] and explor[e] a broad variety of ideas" (Compl. ¶¶ 70, 81); (2) they cannot receive a holistic education on foundational American history, which puts DoDEA students at a disadvantage compared to their peers (*id.* ¶ 76); (3) they cannot "see themselves and their stories represented in their schools" (*id.* ¶¶ 77, 81); (4) they cannot read about women's history (*id.* ¶ 77); and (5) they are afraid to discuss race and gender in their classrooms (*id.* ¶ 80). These injuries are real, cognizable, and ongoing. *Id.* ¶ 82.

Notably, the Government relies upon and misconstrues a non-binding, out of circuit case to argue that Plaintiffs must name specific book titles in the Complaint. In *Cousins v. School Board of Orange County, Florida*, the plaintiffs challenged a law that prohibited instruction on sexual orientation or gender identity. 687 F. Supp. 3d 1251, 1264 (M.D. Fla. 2023). The court found that the plaintiffs did not have standing to bring a First Amendment right to receive information claim because they did not adequately plead redressability. *Id.* at 1277. *Cousins* is inapplicable here because the Government does not challenge redressability. Dkt. 49 at 12–13. Plaintiffs' harms could be redressed here by DoDEA reshelving the books it removed. Compl. ¶¶ 82, 91, 92, 100, 101. Further, the *Cousins* court did not resolve whether the plaintiffs had adequately pled injury-in-fact, though it did note that the complaint largely referenced "only the *parents'* desire for the access to books." 687 F. Supp. 3d at 1277 (emphasis added).

Therefore, even under *Cousins,* Plaintiffs do not need to demonstrate attempts to access the *specific* books that DoDEA removed in order to establish standing. *See also Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976) (determining that student plaintiffs had standing to raise a First Amendment right to receive information claim challenging the removal

of books from their school library without imposing any requirement that plaintiffs had sought to check out the specific titles themselves). Requiring Plaintiffs to plead that they attempted to access information held by the Government, which the Government *refused to disclose*, would create a circular and unreasonable limitation on Plaintiffs' ability to vindicate their First Amendment injury. Dkt. 42. Parents requested information from school officials, attended meetings, and even filed Freedom of Information Act requests in an attempt to ascertain the scope of the book removals and Plaintiffs' resulting injuries, but at every turn, DoDEA declined to specify which titles were being removed. Compl. ¶ 78.[1]

Next, the Government argues that the book removals are not final and therefore Plaintiffs' claims are not ripe for the Court's review. Dkt. 49 at 8. The Government cites no authority to support this proposition. *Id.* The books are now not accessible because the Government decided to remove them. Compl. ¶¶ 32, 33. As this Court has remarked, "the list has [] already had a 'real operative effect.'" Dkt. 54 at 8. The moment books were removed from DoDEA shelves, Plaintiffs suffered an injury. *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *9 (4th Cir. July 1, 2025) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Whether the book removals are classified by DoDEA as final or temporary pending some indefinite "further review"

---

[1] Plaintiffs, in their Motion for a Preliminary Injunction, alleged that L.K. 3, went to her school library to seek specific books—*A Handmaid's Tale* by Margaret Atwood, *The Giver* by Lois Lowry, *Nineteen Eighty-Four* by George Orwell, and *Ground Zero* by Alan Grantz—that had appeared on publicly available lists of titles quarantined by DoDEA. Dkt. 10 at 9. L.K. 2 and L.K. 1 also specifically alleged that they wanted to read titles that appeared on a list of books quarantined in their specific library—*No Truth Without Ruth: The Life of Ruth Bader Ginsburg* and *Finding Wonders: Three Girls Who Changed Science*. *Id.* That none of these titles appears on the list of books under review DoDEA provided to this Court is convenient for the Government. It is cold comfort for Plaintiffs, though, because DoDEA continues to withhold basic information about the review process and books are apparently subject to ideological removal at any time without notice.

is therefore irrelevant to the standing analysis on a claim seeking the books' reshelving. Dkt. 49 at 12. Because books have been removed from Plaintiffs' school libraries, their claims are ripe for the Court's review.

**B.     Plaintiffs have standing to challenge DoDEA's curricula removals.**

Plaintiffs have adequately pled that they are suffering ongoing irreparable injury as a direct result of DoDEA's curricular censorship. *See* Compl. ¶¶ 71–77 (highlighting the removal of a module in AP Psychology, middle school health and hygiene lessons, lessons for fourth graders on immigration, and Black History and Women's History Month curricula). Indeed, the Government does not contest that multiple Plaintiffs missed out on lessons and curricular educational experiences because of DoDEA's implementations of the Executive Orders. Dkt. 49 at 8–11. In an apparent change of strategy, the Government now argues categorically that "there is no constitutional entitlement of students to receive information under the Free Speech Clause." *Id.* at 8. The Government characterized the law more accurately in its Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction. There, the Government recognized that "there is a circuit split over whether [there is] a Free Speech right for schoolchildren to receive information, with the Fourth Circuit not yet wading into the fray." Dkt. 29 at 13. Specifically, the Ninth and Eleventh Circuits have both recognized a student's right to receive information in K-12 public schools. *See Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015), *Virgil. v. Sch. Bd. Of Columbia Cnty., Fla.*, 862 F.2d 1517 (11th Cir. 1989).

The Government bases its new, more limited, reading of First Amendment protections on *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918 (10th Cir. 2002), an out-of-circuit case that did not address students' right to receive information at all. *Fleming* involved student speech, so it describes the framework for analyzing student speech claims, not student right to receive information claims. Likewise, the Government makes great hay over *Hazelwood* itself being a case

about student speech. Plaintiffs do not dispute the facts of *Hazelwood*, and have instead pointed out that multiple federal courts have applied *Hazelwood* to students' right to receive information claims, deeming it fit for purpose. *Arce v. Douglas*, 793 F.3d 698 (9th Cir. 2015), *Virgil v. Sch. Bd. Of Columbia Cnty., Fla.*, 862 F.2d 1517 (11th Cir. 1989), *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218 (N.D. Fla. 2022). In its Motion to Dismiss, the Government ignores this precedent entirely.

## II.    Plaintiffs sufficiently stated a claim.

### A.    Plaintiffs sufficiently pled that DoDEA's book removals violate Plaintiffs' First Amendment rights.

#### i.    *Plaintiffs adequately pled that books have been removed.*

Plaintiffs adequately alleged that books have been removed from DoDEA schools, going so far as to identify specific books removed from specific school libraries. Compl. ¶¶ 1, 32–34, 36–48. Beyond that, Plaintiffs cited to and attached memoranda issued by DoDEA instructing schools to remove books related to "gender ideology" and "discriminatory equity ideology." Compl. Exs. 4–9. Indeed, the Government accepted as true the allegations that book removals occurred. Dkt. 49 at 5–6 ("[F]ive schools removed [] books from the shelves to undergo further review.").

#### ii.    *Plaintiffs adequately pled that the goal of removals is to censor disfavored ideas.*

Plaintiffs adequately alleged, both in their Complaint and in its attachments, that the Government removed books in a "narrowly partisan or political manner." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 870 (1982) (plurality opinion); Compl. ¶¶ 1–3, 28, 32–34, 39–41, 68, 85, 87; Compl. Exs. 4–6, 9. The Government does not dispute that the book removals are based entirely on the Government's assessment that these books might express racial or gender viewpoints with which the current presidential administration disagrees.

Dkt. 49 at 30. The Government acknowledges it is removing books from school libraries because they contain ideas "no longer favored by a majority of the national electorate." *Id.* But that is not how school libraries are supposed to work.

As Plaintiffs argued before, the *Pico* Court expressly noted the "special characteristics of the school library make that environment especially appropriate for the recognition of the First Amendment rights of students." 457 U.S. at 868. It recognized that "[a] school library . . . is 'a place dedicated to quiet, to knowledge, and to beauty.'" *Id.* (quoting *Brown v. Louisiana*, 383 U.S. 131, 142 (1966)). "[S]tudents must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding" and "[t]he school library is the principal locus of such freedom." *Id.* at 868–69 (first quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)). In a school library, "a student can literally explore the unknown, and discover areas of interest and thought not covered by the prescribed curriculum . . . . Th[e] student learns that a library is a place to test or expand upon ideas presented to him, in or out of the classroom." *Id.* at 869 (alteration in original) (quoting *Right to Read Def. Comm. v. Sch. Comm.*, 454 F. Supp. 703, 715 (D. Mass. 1978)).

This case presents textbook viewpoint discrimination in violation of the First Amendment. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) ("At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society."). The Government's response is that books were not removed for "narrowly partisan" reasons. Dkt. 49 at 28. But that is, at best, a factual dispute that should be subject to discovery; Plaintiffs' factual allegations more than plausibly state a claim.

       *iii.*      *Plaintiffs adequately alleged lack of a legitimate government interest.*

Once Plaintiffs have properly pled a First Amendment violation based on the government's improper motive, as Plaintiffs have done here, the Government bears the burden of establishing the legitimacy of its interest in restricting speech and information. Even under the legitimate

penological interests standard that applies in prisons, a far more restrictive environment than schools, the government bears the burden of establishing the interest. *See Beard v. Banks*, 548 U.S. 521, 535 (2006) (plurality opinion) (finding that the institutional defendant has a burden to "show more than a formalistic logical connection between a regulation and a penological objective."); *Robbinette v. Lockhart*, No. 7:17CV00053, 2018 WL 11462840, at \*5 n.11 (W.D. Va. Feb. 15, 2018) ("Although the burden of persuasion is on the prisoner to disprove the validity of a regulation, prison officials 'must still articulate their legitimate governmental interest in the regulation and provide some evidence supporting their concern.'" (quoting *Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015))). Arbitrary and pretextual justifications are invalid. *See, e.g.*, *Romer v. Evans*, 517 U.S. 620, 632 (1996) (holding that overly broad and arbitrary legislation lacks a rational relationship to legitimate state interests).

Here, Plaintiffs have sufficiently alleged at this stage that no such legitimate interest exists for the book removals. Compl. ¶ 88. The Executive Orders and DoDEA guidance called for the removal of books that address race and gender. Compl. ¶¶ 32–34, 37–39. Each of the categories identified by the Executive Orders and DoDEA guidance contains "ideas to which students have a right to choose to be exposed." *Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 1004 (W.D. Ark. 2003). Under any applicable First Amendment test, the Government cannot decide to remove books from public school libraries purely because they disagree with the ideas expressed in them.

### iv. *Plaintiffs adequately pled that they are specifically harmed by the removals.*

As discussed above (*see supra* section I.A), Plaintiffs pled in detail that DoDEA's book removals harm them by preventing Plaintiffs from accessing ideas, receiving a holistic education, seeing themselves represented in their libraries, reading about women's history, and chilling their speech on gender and race. Compl. ¶¶ 67, 68, 70–81. The joint removal of books and curricula

stifles students' intellectual curiosity and hinders the development of critical thinking skills to achieve political aims. *See* Br. of Amici Curiae Fed. Educ. Ass'n and Nat'l Educ. Ass'n in Supp. of Pls.' Mot. for Prelim. Inj. (Dkt. No. 25-1) (highlighting the negative impact of DoDEA book and curricular materials on DoDEA students, teachers, and schools).

> v.    *SCOTUS and decades of precedent hold that students' First Amendment rights are implicated under these facts.*

The Government improperly claims that there is no First Amendment right for students to "'receive information' from the government in government-owned libraries," ignoring decades of precedent. Dkt. 49 at 21. *Pico* "is the only Supreme Court decision dealing specifically with removal of books from a public school library" and "must be used as a starting point." *Case v. Unified Sch. Dist. No. 233*, 895 F. Supp. 1463, 1469 (D. Kan. 1995); *see also Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001 (S.D. Iowa 2025) (applying *Pico*, and explicitly rejecting *Hazelwood*, as the proper standard for evaluating the constitutionality of a state statute regarding school library book removal). The *Pico* plurality affirmed that school boards "may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to 'prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.'" 457 U.S. at 872 (quoting *W. Va. Bd. Of Educ. v. Barnette*, 319 U.S. 624,642 (1943)). The Government's theory, by contrast, would authorize unlimited Government censorship of school and public libraries.

A proper understanding of *Pico's* progeny makes clear that Plaintiffs' facts more than plausibly allege a claim. "Even if the [C]ourt concluded that *Pico* is not persuasive precedent, the majority of courts faced with a school book banning case have held that the removal of a book was unconstitutional." *Unified Sch. Dist. No. 233*, 895 F. Supp. at 1469 (citation omitted); *see also Virden v. Crawford Cnty.*, No. 2:23-CV-2071, 2024 WL 4360495, at *1 (W.D. Ark. Sep. 30, 2024)

(school officials cannot require removal of books "containing LGBTQ themes"); *Minarcini*, 541 F.2d at 584 (school officials must replace Kurt Vonnegut and Joseph Heller novels after removal "by purchase, if necessary"); *Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 681, 693 (D. Me. 1982) (granting preliminary injunction where school removed 365 Days by Ronald J. Glasser, "a compilation of nonfictional Vietnam War accounts by American combat soldiers"); *Right To Read Def. Comm. Of Chelsea v. Sch. Comm. of City of Chelsea*, 454 F. Supp. 703, 715 (D. Mass. 1978) (school officials cannot remove anthology book written by students touching on mature themes); *Salvail v. Nashua Bd. of Educ.*, 469 F. Supp. 1269, 1272, 1275 (D.N.H. 1979) (school board ordered to replace magazine on library bookshelves and resubscribe to the magazine); *Cedarville Sch. Dist.*, 295 F. Supp. 2d at 1005 (restrictions on access to books, even if the books remain in the library, are unconstitutional); *Roberts v. Madigan*, 702 F. Supp. 1505, 1513 (D. Colo. 1989), *aff'd*, 921 F.2d 1047 (10th Cir. 1990) (school officials cannot require removal of the Bible from school library). Indeed, while not addressing book removals, the Fourth Circuit has repeatedly cited approvingly to *Pico's* plurality opinion. *See, e.g.*, *Davison v. Randall*, 912 F.3d 666, 685 (4th Cir. 2019), as amended (Jan. 9, 2019); *Rossignol v. Voorhaar*, 316 F.3d 516, 522 (4th Cir. 2003); *Satellite Broad. & Commc'ns Ass'n v. FCC*, 275 F.3d 337, 353 (4th Cir. 2001).

The Government cites *Little v. Llano County* for the proposition that there is no First Amendment right to receive information in DoDEA schools. Dkt. 49 at 22; 138 F. 4th 834 (5th Cir. 2025). But *Llano* is an out-of-circuit, nonbinding, outlier that only underscores the circuit split with regard to *Pico*. Notably, only seven out of 14 judges joined the assertion that school library curation is government speech. *Id.* As the Eighth Circuit recently held, "the Supreme Court has not extended the government speech doctrine to the placement and removal of books in public school libraries." *GLBT Youth in Iowa Schs. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir.

2024). Nor is it likely to do so, because "it is doubtful that the public would view the placement and removal of books in public school libraries as the government speaking." *Id.* at 668.

**B.      Plaintiffs sufficiently pled that DoDEA's curricular removals violate Plaintiffs' First Amendment rights.**

   *i.    The government speech defense is inapposite for student First Amendment claims.*

The Government argues that "curriculum is government speech and thus immune from First Amendment scrutiny," Dkt. 49 at 14, but the Court should reject this invitation to foreclose all future curriculum-related claims under the government speech doctrine. The government speech defense requires the Government to demonstrate both that (a) the government is the *speaker* expressing its own viewpoint, and (b) the government's action does not regulate, harm, or suppress private speech. *See, e.g.*, *Planned Parenthood of S.C. Inc. v. Rose*, 361 F.3d 786, 792 (4th Cir. 2004) (holding that "when the government speaks for itself and is not regulating the speech of others, it may discriminate based on viewpoint"). The Supreme Court has specifically warned that judges "must exercise great caution before extending our government-speech precedents." *Matal v. Tam*, 582 U.S. 218, 235 (2017). Here, the curricular removals constitute regulatory action aimed at suppressing disfavored viewpoints and harming students' First Amendment right to receive information.

To support their argument that the removal of curricula is government speech, Defendants rely on *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), *Griswold v. Driscoll*, 616 F.3d 53 (1st Cir. 2010), and *Chiras v. Miller*, 432 F.3d 606, 614–15 (5th Cir. 2005). But the commonality in these cases is that the challenged government action was declining to affirmatively include certain speech, not removing speech that had already been included. *See Shurtleff*, 596 U.S. at 249–50 (plaintiffs challenged city's decision not to allow a group to hold a flag raising ceremony at Boston City Hall); *Griswold*, 616 F.3d at 55–56 (plaintiffs challenged state board of education's decision

12

to revise curriculum before it had been implemented); *Chiras*, 423 F.3d at 607 (plaintiffs challenged state board of education's decision not to approve funding for providing a specific textbook in schools).

In *Shurtleff*, plaintiffs brought a First Amendment claim against the City of Boston, arguing that the city's refusal to raise the plaintiffs' "Christian flag" on a flagpole outside Boston City Hall violated the First Amendment. 596 U.S. at 247. To decide whether defendants' decision on which flags to fly was government speech, the court conducted a holistic inquiry comprised of three factors: (1) "the history of the expression at issue"; (2) "the public's likely perception as to who (the government or a private person) is speaking"; and (3) "the extent to which the government has actively shaped or controlled the expression." *Id.* at 252 (citation omitted). Even if the Court were to apply *Shurtleff* to curricular removals, the factors weigh in support of finding that removing books from DoDEA school libraries is not government speech.

First, public school curricula has historically been created by local government bodies such as school boards in collaboration with non-governmental education experts, individual teachers, parents, and students. The Supreme Court has stated, "[o]ur precedents have long recognized certain constitutional limits upon the power of the State to control even the curriculum and classroom." *Pico*, 457 U.S. at 861. Teachers often tailor curricula based on students' interests, and parents regularly volunteer in classrooms to teach subjects related to their expertise. Therefore, historically, public school curricula are determined by both the government and private actors.

Second, the public does not perceive school curricula as the government speaking. Public schools teach many subjects that do not align with the viewpoints of political parties. Indeed, the point of public schools is not to teach students the views of the current government, but to expose them to a wide variety of ideas that allow them to form their own viewpoints. *See Edwards v.*

13

*Aguillard*, 482 U.S. 578, 584 (1987) (emphasizing that "[f]amilies entrust public schools with the education of their children, but condition their trust on the understanding that the classroom will not purposely be used to advance" a particular viewpoint.). This is in line with DoDEA's core values, one of which is that "[l]earning is an active process of discovery where we cultivate curiosity, perseverance, and the desire to learn." *About DoDEA*, DoDEA, https://www.dodea.edu/about/about-dodea. No one believes that the wide variety of ideas taught in public schools are those of the government.

Finally, with regard to the last factor, Plaintiffs do not contest that the federal government has a role in shaping DoDEA's curriculum. Dkt. 49 at 19. But even if that role were sufficiently extensive, the Government still has not established that the curricula removals are government speech. In *Shurtleff*, the Court ultimately found that raising flags was not government speech even though one factor weighed in support of the government. 596 U.S. at 258. Because the first two factors weigh in favor of Plaintiffs, this Court should find that the removal of curricula is not government speech.

In any case, the "state's power to prescribe a curriculum" must still be constitutionally "reasonable." *Meyer v. Nebraska*, 262 U.S. 390, 402 (1923). Thus, for example, the Supreme Court has held that a state cannot, consistent with the Constitution, outright "forbid[] the teaching in school of any subject except in English." *See id.* at 400. Similarly, "the First Amendment does not permit the State" to prohibit teaching the theory of evolution, "for the sole reason that it is deemed to conflict with a particular religious doctrine" held by those in power. *See Epperson v. Arkansas*, 393 U.S. 97, 103, 106 (1968).

Applying those precedents here, the Government cannot remove curricular resources based solely on political ideology. It is not constitutionally appropriate for local educational authorities

14

to "begin to substitute rigid and exclusive indoctrination for the mere exercise of their prerogative to make pedagogic choices regarding matters of legitimate dispute." *See Zykan v. Warsaw Cmty. Sch. Corp.*, 631 F.2d 1300, 1306 (7th Cir. 1980). Because the First Amendment prohibits viewpoint-based ideological, rather than pedagogical, removals of student curricula, the Executive Orders and implementing instructions must be enjoined.

> ii.     *The curricular removals do not meet the Hazelwood test because they are not based on "legitimate pedagogical concerns."*

DoDEA's removal of curricular materials in order to implement the Executive Orders does not satisfy the *Hazelwood* pedagogical test. *Hazelwood* instructs that restrictions on students' access to information must be "reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988) (footnote omitted). Moreover, it is the Government's burden to establish its legitimate interest. *See id.* Here, however, the Government, in its Motion to Dismiss, does not advance even a *post hoc* pedagogical interest, arguing only that the curricular removals were done to comply with the goals of the Executive Orders without connecting them to a legitimate pedagogical interest. *See* Dkt. 29 at 21.

Even if the Government might eventually set forth some legitimate pedagogical interests, Plaintiffs have more than sufficiently pled a lack of such interest in order to state a First Amendment claim. *Arce* is illustrative. In *Arce v. Douglas*, public school students challenged a statute barring school districts from providing curriculum that, *inter alia*, "[is] designed primarily for pupils of a particular ethnic group"—a restriction that led to the elimination of a school district's Mexican American Studies program. 793 F.3d at 973. The Ninth Circuit concluded that the students' First Amendment rights barred the state from removing "materials otherwise available in a . . . classroom unless its actions are reasonably related to legitimate pedagogical concerns." *Id.* at 983 (citing *Hazelwood*, 484 U.S. at 273). On remand, the District of Arizona

ultimately determined that the challenged statute violated students' First Amendment right to receive curricular information. *González v. Douglas*, 269 F. Supp. 3d 948, 972–73 (D. Ariz. 2017). Despite the statute's stated goal of "reduc[ing] racism in schools," a concern that the court agreed was "a legitimate pedagogical objective," the court concluded that the statute in fact amounted to unconstitutional viewpoint-based curricular censorship "enacted and enforced for narrowly political, partisan, and racist reasons." *Id.* at 973.

### iii.    *Plaintiffs' Complaint was well-pled.*

Plaintiffs pled factual statements in support of their claims that (i) curriculum has been removed, (ii) the removals lacked any legitimate pedagogical basis, and (iii) Plaintiffs have been specifically and concretely harmed by the curricular removals. *See* Compl. ¶¶ 1, 50–61; 66–69, 71–77, 80–82. Against these allegations, Defendants appear to ask Plaintiffs to prove a negative: "Plaintiffs have not made any non-conclusory factual allegations to support their theory that the curriculum changes are divorced from pedagogy." Dkt. 49 at 20. But Plaintiffs' detailed allegations are far from conclusory. Plaintiffs alleged that the removal of curricular materials was rooted in an "anti-wokeness" agenda and was not based on a legitimate pedagogical interest. Compl. ¶¶ 67–68, 95–97.  This is more than sufficient to state a First Amendment claim.  *See Hazelwood*, 484 U.S. at 273.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny the Government's Motion to Dismiss.

Dated: July 16, 2025                          Respectfully submitted,

*/s/ Eden B. Heilman*
Eden Heilman, VSB No. 93554
Matthew Callahan, VSB No. 99823
ACLU Foundation of Virginia
P.O. Box 26464
Richmond, VA 23261
(804) 644-8080

eheilman@acluva.org
mcallahan@acluva.org

Emerson J. Sykes
Tyler Takemoto*
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
esykes@aclu.org
ttakemoto@aclu.org

Corey M. Shapiro
William E. Sharp
ACLU of Kentucky Foundation
325 W. Main Street, Suite 2210
Louisville, KY 40202
(502) 581-9746
corey@aclu-ky.org
wsharp@aclu-ky.org

*Attorneys for Plaintiffs*

\* Motion for *pro hac vice* admission forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I, Eden Heilman, hereby certify that on this date, I uploaded a copy of Plaintiffs'
Memorandum of Law in Opposition to Defendants' Motion to Dismiss using the CM/ECF system,
which will cause notice to be served electronically to all parties.

Date: July 16, 2025                         Respectfully submitted,


                                            <u>/s/ Eden B. Heilman</u>

                                            Eden Heilman, VSB No. 93554
                                            ACLU Foundation of Virginia
                                            P.O. Box 26464
                                            Richmond, VA 23261
                                            (804) 644-8080

                                            *Counsel for Plaintiffs*

18