**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| E.K. and S.K., *minors, by and through their parent and next friend Lindsey Keeley, et al.,* | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | No. 1:25-cv-637 (PTG/IDD) |
| DEPARTMENT OF DEFENSE EDUCATION ACTIVITY, *et al.,* | ) ) ) ) | |
| *Defendants.* | ) ) ) | |

**MEMORANDUM ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss, which was filed on June 27, 2025. Dkt. 48. In this suit, twelve students of military families (collectively, "Plaintiffs") at five Department of Defense Education Activity ("DoDEA") schools bring First Amendment claims against Defendants DoDEA, Director of DoDEA Dr. Beth Schiavano-Narvaez, and Secretary of Defense Peter Brian Hegseth (collectively, "Defendants"). Dkt. 1 ("Compl.") ¶¶ 4, 10-18. The Complaint alleges that Defendants violated Plaintiffs' First Amendment rights by removing library books at DoDEA schools and making changes to curricular material in implementation of various Presidential Executive Orders ("EOs"). *Id.* ¶¶ 51, 83-101. In seeking dismissal, Defendants argue that Plaintiffs lack standing and additionally have failed to state a claim for relief under the First Amendment. Dkts. 48-49.

At the time Defendants filed the instant Motion, Plaintiffs' Motion for Preliminary Injunction seeking to restore the removed curricular materials and books to all DoDEA schools was pending before the Court. Dkt. 9. Recognizing the overlapping arguments between the Motion to Dismiss and Defendants' opposition to a preliminary injunction, on July 17, 2025, the

1

Court indicated it would decide the Motion to Dismiss on the papers. Dkt. 56. The Court has since granted injunctive relief in part. Dkt. 59. On October 20, 2025, this Court ordered Respondents to restore the removed books and curricular material as to Plaintiffs' five DoDEA schools. *Id.* In parallel, the Court issued a more fulsome memorandum opinion with its reasoning and assessment of the parties' jurisdictional and merits arguments. Dkt. 58 ("Preliminary Injunction Opinion"). The parties filed cross-appeals of that decision before the Fourth Circuit, which remain pending. Dkts. 60, 63. For the reasons set forth below, the Court now denies Defendants' Motion to Dismiss.

## LEGAL STANDARD

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "[A] federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing Fed. R. Civ. P. 12(h)(3) (providing that the court may dismiss for lack of subject matter jurisdiction at "any time")). "Standing 'is a threshold jurisdictional question' that ensures a suit is 'appropriate for the exercise of the [federal] courts' judicial powers.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (alteration in original) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)). "When a defendant raises standing as the basis for a motion under Rule 12(b)(1). . . the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Rich., Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility requirement mandates that a plaintiff "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Id.* (first quoting *Iqbal*, 556 U.S. at 679; and then quoting *Twombly*, 550 U.S. at 557). When reviewing a motion brought under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

## DISCUSSION

Because the Court addressed the majority of Defendants' arguments for dismissal in its Preliminary Injunction Opinion, it relies extensively on that reasoning here. Dkt. 58. Below, the Court first addresses the jurisdictional arguments and then the Rule 12(b)(6) motion.

### A. Rule 12(b)(1) Motion for Lack of Jurisdiction

Defendants challenge the Court's jurisdiction over Plaintiffs' claims on standing and ripeness grounds. Dkt. 49 at 8; *Allen v. Wright*, 468 U.S. 737, 750 (1984) (stating both ripeness and standing bear on the Court's jurisdiction). To establish Article III standing, a plaintiff must show (1) a concrete, particularized, and actual or imminent injury-in-fact that is (2) fairly traceable to the challenged action by the defendant, and is (3) likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "Ripeness 'concerns the 'appropriate

3

timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)). The Court's review of ripeness "is inextricably linked to our standing inquiry." *Id.* The requirements for both standing and ripeness are relaxed in the First Amendment context, given the "chilling effect" from regulating First Amendment rights. *Id.*; *Sec. of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984).

First, for the reasons stated in its Preliminary Injunction Opinion, the Court finds that Plaintiffs have established Article III standing on both the book removal and curricular changes claims. Dkt. 58 at 14-22. The Court may consider materials outside of the pleadings for standing purposes. *Stroube*, 413 F.3d at 459. Further, "the standard for determining whether Article III standing exists at the preliminary injunction stage carries a higher burden, *i.e.*, a clear likelihood of success." *Action NC v. Strach*, 216 F. Supp. 3d 597, 628 (M.D.N.C. 2016). Accordingly, where Plaintiffs met the standing requirements at the preliminary injunction stage, the Court finds that they have established standing under the lower burden at the motion to dismiss stage as well.

Moreover, Plaintiffs' claims are ripe. Defendants contend that because DoDEA has not made any final decisions on the book and curricular removals, Plaintiffs' claims cannot be ripe. Dkt. 49 at 8. However, as this Court's prior opinions in this matter have laid bare, both the book removals and curricular changes have been operative notwithstanding the lack of final decision-making. *See* Dkt. 54 (highlighting the "real operative effect" of the draft list of removed books); Dkt. 58 at 5-8 (discussing implementation of policies). Accordingly, a live case or controversy exists. *See Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *9 (4th Cir. July 1, 2025) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) ("The loss of First Amendment freedoms, for even

4

minimal periods of time, unquestionably constitutes irreparable injury."). Therefore, the Court has jurisdiction over Plaintiffs' claims.

### B. Rule 12(b)(6) Motion for Failure to State a Claim

Defendants' arguments seeking to dismiss the Complaint for failure to state a claim substantially echo the same arguments asserted in their pleadings in response to the Motion for Preliminary Injunction. *See* Dkts. 29, 49. Because the Court previously addressed several of Defendants' arguments as to the proper First Amendment framework, the Court incorporates by reference its reasoning as to the legal standard from its Preliminary Injunction Opinion. Dkt. 58 at 22-40. The Court's review of a motion to dismiss is limited to the pleadings, unlike its review of a preliminary injunction motion. Fed. R. Civ. P. 12(d). Nevertheless, the Court finds that on the pleadings alone, Plaintiffs have stated a plausible claim under the First Amendment with respect to both the curricular changes and book removals.

#### i. *Curricular Changes*

The Court reviews the First Amendment challenge to the curricular changes under the standard articulated in *Hazelwood School District v. Kuhlmeier*, which permits regulation of school-sponsored speech where "reasonably related to legitimate pedagogical interests."[1] 484 U.S. 260 (1988). The facts alleged in the Complaint suggest that Defendants' regulation of DoDEA's curricular materials is not reasonably related to pedagogical interests. On the contrary, the allegations in the pleadings make clear that DoDEA's curricular changes stem from a directive from the President of the United States. Compl. ¶¶ 2, 25-31. As this Court asserted with respect

---

[1] The Court rejects Defendants' suggestion that school curricular speech is government speech. Dkt. 49 at 14. As Defendants' relied-upon case *Boring v. Buncombe County Board of Education* makes clear, under Fourth Circuit law, restrictions on curricular speech are assessed under the *Hazelwood* standard. 136 F.3d 364, 368 (4th Cir. 1998) (applying *Hazelwood* on the grounds that the regulated speech at issue was part of the school's curriculum).

to the preliminary injunction, Plaintiffs' attachments to the Complaint demonstrate that "the Secretary of Defense and DoDEA administrators immediately deferred to the President's directives absent any further pedagogical review or cited interest." Dkt. 58 at 39; *see also* Dkt. 1-10 at 2 (Memorandum from Defense Secretary Pete Hegseth barring DoD from "provid[ing] instruction on Critical Race Theory (CRT), DEI, or gender ideology . . . "); Dkt. 1-11 (Memorandum from DoDEA Acting Chief Academic Officer directing instructors to cease using curricula "potentially related to gender ideology or discriminatory equity ideology topics[.]").

Nor do Defendants' asserted pedagogical interests appear to be reasonably reflected in the curricular changes. Defendants aver that *Hazelwood* permits DoDEA to regulate curriculum on gender ideology, discriminatory equity ideology, and invidious race and sex discrimination, all of which "have been part of national discourse for some time." Dkt. 49 at 20-21. Again, the Court reiterates: it cannot contemplate the pedagogical basis for banning the "Gender and Sex" module in Advanced Placement Psychology; lessons on immigration in elementary school; chapters on "Human Reproductive System, Menstrual Cycle, and Fetal Development, Abuse and Neglect," and "Adolescence and Puberty" from health education textbooks; and celebrations related to "identity months," including Black History and Women's History Months. Compl. ¶¶ 52, 56-57; Dkt. 1-11 at Attachment A; *see also* Dkt. 58 at 39-40. Accordingly, Plaintiffs have alleged sufficient facts to state a First Amendment violation with respect to the curricular changes.

### ii. *Book Removals*

Similarly, the Court finds that the Complaint states a plausible First Amendment claim with respect to the book removals. This Court has already rejected Defendants' position that (1) the right to receive information does not extend to a library's decision to remove books, and that (2) book removals constitute government speech. Dkt. 58 at 23-37. In its Preliminary Injunction

6

Opinion, the Court further addressed the unresolved legal framework around First Amendment challenges to book removals. *Id.* at 28-37. In accordance with the weight of authority in other courts, the Court determined it would evaluate the book removals under the legal standards set forth by both the plurality opinion in *Board of Education v. Pico*, 457 U.S. 853 (1982), and the majority in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260 (1988). *Id.* at 28-37. Accordingly, the Court looks to (1) whether the underlying motivation for removal is improper, and (2) whether legitimate pedagogical interests justify the book removals. *Id.*; *see also PEN Am. Ctr., Inc, v. Escambia Cnty Sch. Bd.* 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024); *ACLU of Fl., Inc. v. Miami-Dade Cnty Sch. Bd.*, 557 F.3d 1177, 1202 (11th Cir. 2009).

Applying that standard to the Complaint, the Court finds that Plaintiffs' allegations support a plausible claim that Defendants' stated motivations for removing hundreds of library books set forth an impermissible partisan or political motivation. For example, a memorandum from DoDEA's Acting Chief Academic Officer—which is attached to the Complaint—details that the book removals are done in "alignment with the applicable Executive Orders," which target politically divisive topics. Dkt. 1-4. Further, the Complaint points to the President's own words as a direct link between his EOs and his war on "wokeness." Dkt. 1 ¶ 28; *see also Pico*, 457 U.S. at 870-71 (Blackmun, J., concurring) ("[T]he State may not act to deny access to an idea simply because state officials disapprove of that idea for partisan or political reasons."). A directive from the President on eradicating "wokeness" is the pinnacle of narrow partisan motivations.

The Complaint asserts a valid First Amendment challenge to the book removals under the *Hazelwood* standard as well. As with the curricular changes, the book removals implement, in whole, the President's EOs and are not limited to any particular "pedagogical standards and priorities." Indeed, if anything, Defendants' stated interests run afoul of *Hazelwood* because they

"associate the school with any position other than neutrality on matters of political controversy." 484 U.S. at 272. A pedagogical priority or other motivation set directly by the President of the United States, in accordance with his political views and no further pedagogical inquiry from the educational system, is exactly the type of conduct deemed impermissible under the First Amendment. Accordingly, the Court finds that Plaintiffs have stated a plausible claim for a First Amendment violation with respect to the book removals as well.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. 48) is **DENIED.**

Entered this ___ day of March, 2026.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge

8
