**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| E.K. and S.K., minors, by and through their parent and next friend, LINDSEY KEELEY, *et al.*, | |
| Plaintiffs, | Case No. 1:25-cv-637 (PTG/IDD) |
| v. | |
| DEPARTMENT OF DEFENSE EDUCATION ACTIVITY, *et al.*, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS**

Pursuant to Local Civil Rule 7(F)(1), Defendants, through their undersigned counsel, hereby respectfully submit this memorandum of law in support of their motion to stay proceedings in the above-captioned action pending resolution of Defendants' appeal and Plaintiffs' cross-appeal from this Court's entry of a preliminary injunction to the United States Court of Appeals for the Fourth Circuit.

## INTRODUCTION

After the completion of the Government's typical comprehensive inter-agency process, Defendants have now noticed an appeal from this Court's entry of a preliminary injunction—directed to the Department of Defense Education Activity—to the United States Court of Appeals for the Fourth Circuit. And Plaintiffs subsequently noticed a cross-appeal from that same order. In light of these appeals, Defendants respectfully seek a stay of the proceedings in this Court until the Fourth Circuit renders its decision. There are many compelling reasons for this Court to enter a stay here, as at least one Fourth Circuit district court has concluded under very similar circumstances.

Paramount among these reasons is judicial economy. The next steps in this action are for the parties to undertake discovery. Because the Fourth Circuit is simultaneously reviewing the legal propriety of the claims that form the basis of this Court's preliminary injunction, the outcome of any future proceedings will necessarily be impacted by the Fourth Circuit's review of Plaintiffs' legal theories. Conducting discovery on these issues now, while the Fourth Circuit is simultaneously considering them, leaves open the substantial possibility that discovery may need to be revisited or reopened following a decision by the Fourth Circuit. Such a stay will have no harmful effect on Plaintiffs; indeed, this Court's preliminary injunction will remain in effect during the stay and proceedings in the Fourth Circuit. For those who attend any of the five schools identified in the Court's order, they will have access to any of the curricular materials and books that were removed after January 19, 2025. Moreover, to further ensure that there is no harmful effect on the Plaintiffs, Defendants have separately moved for an indicative ruling with this Court to enable the injunction to carry over to any new school to which a Plaintiff might transfer.

For these reasons, which are explained more fully below, Defendants respectfully request that this Court stay proceedings in this matter pending resolution of the pending Fourth Circuit appeal.

## BACKGROUND

Plaintiffs, twelve students in five Department of Defense Education Activity ("DoDEA") schools brought two claims under the First Amendment's Free Speech Clause on April 15, 2024. *See generally* Dkt. 1. As a general matter, Plaintiffs maintained that Defendants violated their First Amendment right to information when they removed certain materials from the curriculum and books from the libraries. *See generally Id.* Plaintiffs later moved for a preliminary injunction on May 7, 2025. Dkt. 9. On October 20, 2025, this Court granted Plaintiffs' motion and enjoined

Defendants "from further removals of educational books and curricular content in implementation of Executive Order Nos. 14168, 14185, and 14190 and any related memoranda, directives, and guidance at Plaintiffs' DoDEA schools" in any of the five DoDEA schools that Plaintiffs attended. Defendants timely appealed that Order on December 18, 2025, Dkt. 60, and Plaintiffs timely cross-appealed, Dkt. 63.

As this Court is well aware, the Solicitor General must authorize appeals taken by federal agencies and officials (when sued, as here, in their official capacities). *See* 28 C.F.R. § 0.20(b); *Justice Manual*, § 2-2.121[1]. After this Court's entry of the aforementioned preliminary injunction, the government considered, and the Solicitor General subsequently authorized an appeal, and Defendants filed their opening brief on March 27, 2026. *See E.K., et al. v. Dep't of Def. Educ. Activity*, 25-2497 (4th Cir.) (ECF No. 25); *see also Justice Manual*, §§ 2-2.110; 2-2.111.

During the pendency of that appeal, this Court denied Defendants' motion to dismiss the Complaint on March 20, 2026. Dkt. 73. Defendants timely filed their answer on April 23, 2026. Dkt. 84. Appreciating that this Court would likely enter its standard scheduling order soon thereafter, Defendants sought Plaintiffs' position on a motion to stay discovery pending appeal. Plaintiffs generally opposed given they would be harmed in the event they transferred to another school that was outside the Court's initial injunction order. To address this concern, Defendants moved for an indicative ruling (Dkt. 81), which remains pending with this Court, so that the injunction could apply to any new DoDEA school a Plaintiff attends that was not originally covered in the preliminary injunction order. Even though Defendants attempted to secure this relief, Plaintiffs oppose this motion, which Defendants make at this time as the Court entered its standard discovery order on September 14, 2026.

[1] Available at https://www.justice.gov/jm/justice-manual (last visited Oct. 1, 2026).

# ARGUMENT

## I. General Standards

The Supreme Court has recognized that "[t]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This "inherent power" allows for the "efficient management" of the court's docket. *Hawley v. Johnson & Johnson*, 2011 WL 7946243, at *1 (E.D. Va. Apr. 29, 2011) (quoting *Williford v. Armstrong World Indus.*, 715 F.2d 124, 127 (4th Cir. 1983)).

When evaluating a motion to stay, a court should consider three factors: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; [and] (3) potential prejudice to the non-moving party." *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *2 (E.D. Va. Sept. 16, 2013) (internal quotation marks omitted); *see also Hawley*, 2011 WL 7946243, at *1 ("When determining whether a stay is appropriate, a district court must 'weigh competing interests and maintain an even balance.'" (quoting *Landis*, 299 U.S. at 255)); *see also Int'l Refugee Assist. Project v. Trump*, 323 F. Supp. 3d 726, 730 (D. Md. 2018) (weighing these factors in considering, and ultimately granting, a request to stay district court proceedings pending appeal). In general, the decision of whether to stay a case "lies within the sound discretion" of the court. *See Fisher v. United States*, 2013 WL 6074076, at *4 (E.D. Va. Nov. 18, 2013).[2]

[2] To be clear, Defendants do not ask this Court to stay its preliminary injunction pending appeal, for which a higher standard would apply. *See, e.g.*, *Am. Hotel & Lodging Assoc. v. City of Los Angeles*, 2015 WL 10791930, at *3 (C.D. Cal. Nov. 5, 2015) (explaining the difference in the standard to be applied for a request to stay the enforcement of an order or judgment and the standard—which applies in this case—to be applied with respect to a request to stay further proceedings pending appeal of a discrete ruling). Plaintiffs attending any of the five schools identified in the Court's order will be able to have access to any curricular modules or books removed after January 19, 2025.

## II. THE COURT SHOULD STAY PROCEEDINGS IN THIS ACTION DURING THE PENDENCY OF THE CURRENT FOURTH CIRCUIT APPEALS

Here, each factor articulated in *Sehler* weighs in favor of a stay during the pendency of Defendants' and Plaintiffs' interlocutory appeals of this Court's entry of a preliminary injunction.

### A. A Stay Will Conserve Judicial Resources and the Parties' Resources

Taking the first two factors together, staying the case at this stage will serve to preserve scarce judicial resources, avoid the burden of multiplied proceedings on all parties, and prevent multiple rounds of cumbersome discovery involving considerations of whether the parties can collect evidence abroad without violating customary international law. Although the appeal of a preliminary injunction does not divest the trial court of jurisdiction, "in cases where the validity of a preliminary injunction was before the circuit court or the Supreme Court, district courts have at times stayed proceedings for reasons of judicial economy." *Int'l Refugee Assist. Project*, 323 F. Supp. 3d at 731-32 (collecting cases). Judicial economy will be served by a stay here because the resolution of the issues before the Fourth Circuit "will likely have a direct impact on the future of the case, including on the next decisions this Court must make." *Id.* at 732.

There are a number of "next decisions" potentially facing this Court, many of which are legally and factually complex, and which are likely to be impacted—or even finally determined—by the Fourth Circuit's ultimate decision in the pending appeal. Staying proceedings in this Court to await the Fourth Circuit's decision will prevent this Court and the parties from expending scarce resources to resolve such issues now and then *again* once the Fourth Circuit rules.

#### 1. Many of the Legal Issues Material to the Case Are Identical to Those Raised on Appeal

Defendants anticipate preparing and filing motions for summary judgment at the end of discovery in this action, which may be complete before the Fourth Circuit issues its ruling in the pending appeal from this Court's preliminary injunction. Certain of the legal issues that will be

presented to this Court in this forthcoming dispositive motion are indistinguishable from the legal issues on which the Fourth Circuit will be required to opine in exercising appellate jurisdiction over this Court's entry of a preliminary injunction. In entering the preliminary injunction, this Court held that Plaintiff had demonstrated a clear likelihood of success on the merits of their First Amendment claims based on the following general conclusions: (1) that the government speech doctrine was inapplicable to Defendants' book removals and curricular removals, Dkt. 58 at 24, 38; and (2) that the Executive Branch failed to sufficiently articulate a pedagogical interest to justify the removals of curricular materials and the books, Dkt. 58 at 33, 39. As such, in reviewing the preliminary injunction, the Fourth Circuit will necessarily be required to assess whether Plaintiffs have demonstrated a sufficient likelihood of success on these legal theories.

Defendants' motion for summary judgment will likely require an assessment of the threshold legal viability of these very same constitutional theories, the difference being that Defendants would argue based on the factual record rather than the allegations in Plaintiffs' Complaint. Moreover, any decision from the Fourth Circuit on these purely legal issues concerning the reach of the First Amendment in a school's curricular and book choices would be binding on this Court. *See, e.g.*, *United States v. Root*, 10 F.4th 314, 346 (4th Cir. 2021) ("Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). And thus, the Fourth Circuit's decision on the current appeal may provide dispositive guidance on the First Amendment issues identified above, and would guide this Court's resolution of any forthcoming dispositive motion for summary judgment at the close of discovery. In near identical circumstances, other courts, including another in this circuit, have recognized that a stay pending the resolution of interlocutory appellate proceedings would further

judicial economy:

> The Government has stated its intention to file a motion to dismiss in which it will assert several threshold bases for dismissal . . . . [W]aiting for the Supreme Court to rule would likely simplify this Court's task in resolving a motion to dismiss, while moving forward without a stay would likely result in a ruling by this Court that would be subject to revisitation and potential modification.

*Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 733.[3]

As such, the judicial resources preserved by awaiting the substantive guidance that both the parties and this Court will receive from the Fourth Circuit in the context of the currently-pending preliminary injunction appeal weigh strongly in favor of a stay of proceedings here.

2. Complex and Resource Intensive Issues are Likely to Arise in Discovery

Second, in the absence of a stay, this Court will almost certainly have to expend scarce judicial resources to address several sensitive and complex issues about the scope and breadth of discovery. *See Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 735 ("Until the legal landscape is charted by the Supreme Court, discovery will be a fraught enterprise, steeply taxing both the parties and this Court."). Awaiting a definitive ruling on that "legal landscape" from the Fourth Circuit in the currently-pending interlocutory appeals will allow both the parties and this Court to obtain a better understanding of the "claims and defenses" properly subject to the discovery process, and potentially obviate the need to address complex discovery matters—including those implicated by evidence relevant to the claims and defenses that is located abroad.

Given the location of the key events involved in this action, discovery will pose unique challenges for the parties and this Court. Staying proceedings pending the resolution of the currently-pending Fourth Circuit appeals could eliminate, or at least limit, the number these

[3] In fact, the Supreme Court itself approved of a stay pending the resolution of an appeal even sin a *separate case* because although that independent appeal would "not settle every question of fact and law," it would "settle many and simplify them all." *Landis*, 299 U.S. at 256.

complex issues, and the need for this Court to resolve them.

a. Driving the complexity of discovery in this case is the fact that key events occurred and key witnesses are overseas—at least in Italy, Japan, and the Republic of Korea. Under international law, "a state may not exercise jurisdiction to enforce in the territory of another state without the consent of the other state." Restatement (Fourth) Foreign Relations Law of the United States § 432 (Am. Law Inst. 2018). *See also id.* Reporters' Note 1 ("Enforcement jurisdiction includes . . . the performance of coercive governmental functions. Examples include . . . taking deposition and witness statements, [and] executing an order for the production of documents . . . "). It is for that reason that discovery—*i.e.*, gathering information, producing documents, or making witnesses available for testimony—must be conducted in a manner consistent with the terms by which foreign sovereigns have permitted the United States to collect evidence for judicial proceedings. That is not without difficulty.

In many countries, particularly in civil law jurisdictions, evidence-gathering is an action reserved exclusively to the judiciary. In such jurisdictions, including the three jurisdictions mentioned above, obtaining evidence for use in foreign litigation matters without permission from a competent government authority is considered an infringement on their sovereignty, even on a voluntary basis and even when undertaken by private individuals in connection with private litigation. *See, e.g.*, Michael M. Baylson & Steven S. Gensler, *Should the Federal Rules of Civil Procedure Be Amended to Address Cross-Border Discovery?*, 107 Judicature 19 (2023) ("But many countries view evidence gathering as a task for the state and consider party efforts to gather evidence as an intrusion on their sovereign authority."); Fed. R. Civ. P. 28, advisory committee notes to 1963 amendment (recognizing that in certain countries "the taking of testimony by a foreign official in aid of litigation pending in a court of another country [is seen as] as an

infringement upon its sovereignty" and that "[s]ome foreign countries are hostile to allowing a deposition to be taken in their country"); *see also United States v. Google, LLC*, 690 F. Supp. 3d 1011, 1031 (N.D. Cal. 2023) ("In most civil law countries (such as the Republic of Korea), the taking of evidence from private parties falls within the province of the courts; when private parties act to secure evidence controlled by other private parties in a civil law nation without the participation or consent of the nation's authorities, the 'judicial sovereignty' of the civil law country may be offended."); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 292 F.R.D. 19, 22 (D.D.C. 2013) (acknowledging that an appropriate consideration to override the presumption that corporate defendants be deposed at their principal place of business include, when applicable, "the legal impediments to holding a deposition in the foreign nation and the potential affront to that nation's sovereignty").

Japanese officials have informed the U.S. Department of State that any deposition for testimony to be used in aid of U.S. litigation, including virtual testimony of a U.S. citizen, requires the specific permission of Japanese officials and must be undertaken in accordance with Article 17(1) (e) of the Consular Convention and Protocol, U.S.-Japan, Mar. 22, 1963, 15 U.S.T. 768. *See* Dep't of State, "Japan, Judicial Assistance Country Information."[4] To obtain this permission, Japanese officials generally would require a formal letters rogatory request from this Court. The letters rogatory process can be cumbersome and time consuming. Given this reality, as a practical matter, witnesses may be required to travel to the United States (or a U.S. territory or another country in the region) to allow for depositions to be scheduled in a timely manner, despite the theoretical availability of remote means of testimony from Japan.

[4] Available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Japan.html (last accessed Oct. 1, 2026)

There are also obstacles for securing the testimony of witnesses in Italy—even from U.S. citizens on a voluntary basis. Italy and the United States are both parties to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S No. 7444 (hereinafter, "Hague Evidence Convention"), which provides particular channels to obtain deposition testimony for use in foreign civil or commercial litigation, subject to certain conditions and requirements for permission.[5] As relevant here, a deposition could be taken by a consul or commissioner under certain conditions. Pursuant to Article 15 of the Convention, a "diplomatic officer or consular agent" would be required to conduct the deposition. Under this procedure, the specific prior consent of a competent Italian authority is not required as Italy has not issued a relevant declaration.[6] Hague Evidence Convention, Art. 15(2). *See also* Kingdom of the Netherlands, Hague Evidence Convention Depositary, Declarations of Italy, *available at* https://treatydatabase.overheid.nl/en/Treaty/Details/002883_p.html#Italy (last accessed Oct. 1, 2026). Second, pursuant to Article 17, "a person duly appointed as a commissioner for the purpose"

[5] Although the Hague Evidence Convention does not limit a Contracting Party from permitting evidence gathering upon less restrictive means, *see, e.g.*, *id.* Art. 27, the United States government, to the best of undersigned counsel's knowledge, is not aware of any methods outside of the Hague Evidence Convention that would not require specific permission from a competent Italian authority.

[6] There is one significant limitation to the use of Article 15 without obtaining the specific consent of a competent Italian authority. The Italian government has stated that it would require specific consent for remote depositions, which is likely the tool that any party would use in this case when witnesses are abroad in Italy. Indeed, according to Italy's 2022 video-link questionnaire response on the Hague Conference on Private International Law website (available only in French), depositions may be taken by video-link under Article 15, but permission is required. *See* Profil d'État, Italie, Obtention De Preuves par Liaison Vidéo en Vertu de La Convention Du 18 Mars 1970 Sur L'obtention Des Preuves À L'étranger En Matière Civile Ou Commerciale, Partie VI(c) (Jan. 2, 2022), https://assets.hcch.net/docs/d5cead86-20f5-425f-a685-6df5b3b93b46.pdf ("L'autorisation est nécéssaire pour les actes d'instruction qui concernent les citoyens de l'Etat de residénce (art. 15). Elle est requise à l'Autoritè [sic] centrale.") (rough translation: "Authorization is necessary for the taking of evidence from citizens of the state of residence (Article 15). Authorization is solicited from the Central Authority.").

(or "Commissioner") may take evidence from a person of any nationality in the territory of a member state with the specific permission of the competent Italian authority. Hague Evidence Convention, art. 17. To secure permission, the competent Italian authority may first require a court order from the U.S. court formally appointing a commissioner. *See, e.g.,* The Hague Conference on Private International Law, *Guidelines for Completing the Model Forms*, at 3, https://assets.hcch.net/docs/7c4bb27b-a9fa-4f90-8dda-cb52a63d9863.pdf (last accessed Oct. 1, 2026). Securing the requisite permissions will create burdens for the parties, and likely this Court, and may result in delays while awaiting the consideration of foreign authorities over which none of the U.S. parties have control.

Finally, there are obstacles to the collection of evidence in the Republic of Korea, which is where some of the named Plaintiffs now reside. Dkt. No. 91-1. The Republic of Korea is a party to the Hague Evidence Convention, and does not permit direct evidence gathering except with respect to consular depositions of U.S. citizens under Article 15.[7] *See* Kingdom of the Netherlands, Hague Evidence Convention Depositary, Reservations of Republic of Korea (excluding the application of Articles 16 and 17 of the Hague Evidence Convention).[8] Accordingly, as relevant here, the only means to arrange for the direct depositions of witnesses in the Republic of Korea (assuming they are U.S. citizens and consent to the testimony) is to conduct the deposition before a consular officer. Hague Evidence Convention, Art. 15. That involves traveling to the U.S. Embassy in Seoul, Korea or the Consulate in Busan, Korea. Dep't of State, "U.S. Embassy & Consulate in the Republic of Korea, Contact Us" https://kr.usembassy.gov/contact-us/ (last

---

[7] Although the Hague Evidence Convention does not limit a Contracting Party from permitting evidence gathering upon less restrictive means, *see, e.g.*, *id.* Art. 27, the United States government is not aware of any methods outside of the Hague Evidence Convention.

[8] Available at https://treatydatabase.overheid.nl/en/Treaty/Details/002883_p.html#Republic%20of%20Korea,%20the (last accessed Oct. 1, 2026)

accessed Oct. 1, 2026). Alternatively, these witnesses must travel to the United States, U.S. Territory (*e.g.*, Guam), or a third country that permits direct evidence-gathering to attend a virtual deposition.

Put simply, discovery in this action will pose significant logistical challenges. It makes sense, and promotes judicial economy, to confront those challenges only once, and after the Fourth Circuit has spoken on the viability of the legal theories presented in this action.

b. A stay will also prevent this Court from having to reopen discovery to allow for additional inquiries after the Fourth Circuit issues its opinion. That is particularly important given the burdens discussed above. Indeed, a stay would prevent any individuals abroad from having to sit for a deposition now, and then *again* in the wake of the Fourth Circuit's decision on the pending interlocutory appeal and cross appeal. Indeed, it is possible that between now and resolution of the appeal, some of the parents of the named plaintiffs will receive permanent change of station orders to *other* foreign countries beyond Italy, Japan, and the Republic of Korea, thus necessitating navigating the requirements of collecting evidence from witnesses in additional foreign countries. Even outside of deposition practice, the prospect that Defendants may face renewed or reopened discovery following any changes that the Fourth Circuit's opinion may spur only multiplies the hardship to the parties that discovery at this stage may pose.

* * *

In short, "to consider and resolve" discovery issues and dispositive motions in advance of a Fourth Circuit ruling on the viability of the sole claims on which this Court's preliminary injunction is based, that is, Plaintiffs' First Amendment claims, "would be inefficient, regardless of whether that decision proves to be consistent or inconsistent with this Court's ruling on such a motion, because one or more parties would undoubtedly and justifiably seek re-litigation of the

motion in light of the new guidance." *Int'l Refugee Assistance Project*, 323 F. Supp. 2d at 734.

### B. Plaintiffs Would Not be Prejudiced by a Stay of Proceedings

Moreover, a stay will not prejudice Plaintiffs. Throughout the pendency of the appeal and the cross-appeal, this Court's preliminary injunction will remain in effect. As such, for any Plaintiff attending one of the five schools listed in the Court's order, they will continue to have access to any of the curricular modules or books removed after January 19, 2025 as a result of the President's Executive Orders and Secretary's implementing guidance and directives. In other words, this Court has already entered an order to restore the status quo as it was on January 19, 2025, and a stay of this action will not affect that status quo.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to stay the proceedings pending resolution of the presently-pending appeals.

Dated: October 1, 2026

Respectfully submitted,

TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

By: /s/

MEGHAN E. LOFTUS
MATTHEW J. MEZGER
Assistant United States Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3757/3741
Fax: (703) 299-3983
Email: meghan.loftus@usdoj.gov
matthew.mezger@usdoj.gov

*Counsel for Defendants*